431 A.2d 877

**COMMONWEALTH of Pennsylvania**

v.

**Martin WEXLER, Estelle Wexler, Vicki Wexler, Appellants.**

Supreme Court of Pennsylvania.

July 2, 1981.

Martin Wexler, I.P.P., Montgomery Co., for appellants.

Ronald T. Williamson, Asst. Dist. Atty., Montgomery Co., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

This is an appeal from an Order of the Superior Court that affirmed an Order of the Court of Common Pleas, Montgomery County, denying appellants' petition for expungement of their arrest records.

Appellant Martin Wexler was arrested and charged with corruption of a minor on April 7, 1977, following a search of his residence and the confiscation of marijuana and drug paraphernalia discovered in the bedroom of Vicki Wexler, his minor daughter. Appellant Vicki Wexler was also arrested at that time and charged with possession of marijuana with intent to manufacture or deliver and criminal conspiracy with Howard Erdreich, a minor, who was also arrested at the scene.

Mr. Wexler was incarcerated for six days following his arrest. Bail, originally set at $20,000 straight, was reduced at the preliminary hearing to $10,000 straight. At the preliminary hearing on the charge of corruption of a minor (where he appeared pro se), appellant Martin Wexler was advised of an added charge of criminal conspiracy and the complaint was amended at that time. It appears, from the comments of the presiding district justice, the procedure utilized by the assistant district attorney was, at the very least, a questionable one.[1] Appellant, Estelle Wexler, Martin Wexler's wife, present at her husband's preliminary hearing, was arrested at that time and also charged with criminal conspiracy and corruption of a minor.

[1] The district justice stated,
"... never in my Court ... has anyone ever attempted to change a Complaint once it was filed before me unless they did it in the presence of the Defendant.

\* \* \* \* \* \*

"And I will also state as long as I sit on the bench, in case there are any changes to be made they will be made with the full knowledge of the defendant. We don't go around making changes just at will when somebody gets an idea."

On May 9, 1977, appellant Vicki Wexler entered into a consent decree in Juvenile Court pursuant to § 8.1 of the Juvenile Act.[2] In accordance with the consent decree she was released to the care and custody of her parents under the supervision of the Probation Office of Montgomery County, said decree to remain in effect for a period of twelve months unless terminated sooner with the Court's approval. On August 1, 1977, the Commonwealth filed a Petition for Nolle Prosequi of the charges against Mr. and Mrs. Wexler and the petition was granted. Thereafter, appellants filed a petition to expunge their arrest records. Following a hearing on January 27, 1978, the hearing judge denied the petition in an order dated January 31, 1978. Appellants appealed; the Superior Court affirmed per curiam. This appeal followed. For the reasons set forth below we reverse.

## I.

The serious harm an individual may suffer as a result of the Commonwealth's retention of an arrest record has been set forth in *Commonwealth v. Malone*, 244 Pa.Super. 62, 68–69, 366 A.2d 584, 587–88 (1976). Because of this potential hardship, the Court in *Malone* recognized that in certain circumstances substantive due process guarantees an individual the right to have his or her arrest record expunged. In determining whether justice requires expungement, the Court, in each particular case, must balance the individual's right to be free from the harm attendant to maintenance of the arrest record against the Commonwealth's interest in preserving such records. The Superior Court, in *Commonwealth v. Iacino*, 270 Pa.Super. 350, 411 A.2d 754 (1979) (Spaeth, J., concurring) listed several factors that should be considered in determining the respective strengths of the Commonwealth's and petitioner's interest in this type of case, and we cite them here with approval:

2. Act of December 6, 1972, No. 333, § 8.1, 11 P.S. § 50–305, substantially reenacted by Act of July 9, 1976, P.L. 586, No. 142, § 2, eff. June 27, 1978. As amended April 28, 1978, P.L. 202, No. 53, § 29, eff. June 27, 1978, 42 Pa.C.S.A. § 6340.

"These [factors] include the strength of the Commonwealth's case against the petitioner, the reasons the Commonwealth gives for wishing to retain the records, the petitioner's age, criminal record, and employment history, the length of time that has elapsed between the arrest and the petition to expunge, and the specific adverse consequences the petitioner may endure should expunction be denied."

*Id.*, 270 Pa.Super. at 358, 411 A.2d at 759. We note that this is not necessarily an exclusive or exhaustive list; other factors may require examination in a particular case.

Our consideration of the factors first listed in *Iacino* compels the conclusion that the hearing court erred in denying appellants' petition for expungement. The hearing court, in its opinion, appears to have relied exclusively on the asserted lawfulness of the arrests and the judge's conclusion at the preliminary hearings that the Commonwealth had presented a prima facie case at that time. This is not dispositive of the issue, however.

In regard to Martin and Estelle Wexler, the Commonwealth averred in its petition for nolle prosequi that the activities of Mr. and Mrs. Wexler "will not give rise" to the charges pending against them. Thus, the district attorney's office determined that "a nolle prosequi will be in the best interest of justice." Furthermore, at the expungement hearing, the assistant district attorney stated,

"It is our position here, your Honor, that in view of the circumstances of this case, we felt that we could not prove. . . [Mr. and Mrs. Wexler] at this time guilty beyond a reasonable doubt. . .".

Thus, appellants Martin and Estelle Wexler were never tried because the informations were subsequently nol pros'd upon the district attorney's confession that he would be unable to sustain his burden of proof at trial. We believe this fact places a heavy burden upon the Commonwealth to present compelling evidence justifying the retention of Mr. and Mrs. Wexler's arrest records.

The Superior Court cases which address the question of which party should bear the burden in expungement cases have been somewhat inconsistent although a discernible pattern has emerged. Generally, in cases where the Commonwealth has been unable to establish a prima facie case against the individual petitioning for expungement, the Superior Court has determined that the burden falls upon the Commonwealth to present compelling evidence justifying the retention of the arrest record. *Commonwealth v. Briley*, 278 Pa.Super. 363, 420 A.2d 582 (1980). In *Chase v. King*, 267 Pa.Super. 498, 406 A.2d 1388 (1979), however, the Superior Court held that since the Commonwealth had established a prima facie case at trial the appellant bore the burden of affirmatively demonstrating nonculpability at his expungement hearing. The Superior Court reached that result in *Chase* even though appellant had been acquitted of the crime charged because it "was a case of mistaken identity" and the acquittal had resulted from that fact.

■ We believe the import of the Court's decision in *Chase* is that if the Commonwealth establishes that *a crime* was committed, and not that *the particular defendant* was responsible, appellant must bear the burden of presenting compelling evidence justifying the expungement of the arrest record. We cannot agree with such a conclusion. Rather, if the Commonwealth *does* not bear its burden of proof beyond a reasonable doubt (which occurred in *Chase*), or admits that it is *unable* to bear its burden of proof (as in the present case), the Commonwealth must bear the burden of justifying why the arrest record should not be expunged. This position is consistent with other cases in the Superior Court. *E. g., Commonwealth v. Welford*, 279 Pa.Super. 300, 420 A.2d 1344 (1980); *Commonwealth v. Iacino, supra; Commonwealth v. Rose*, 263 Pa.Super. 349, 397 A.2d 1243 (1979); *Wert v. Jennings*, 249 Pa.Super. 467, 378 A.2d 390 (1977); *Cf., Commonwealth v. Mueller*, 258 Pa.Super. 219, 392 A.2d 763 (1978).

■ The Commonwealth did not advance any reason at the expungement hearing why retainment of appellants

Martin and Estelle Wexler's arrest records is necessary. In support of its position the Commonwealth, in its brief, simply underscored a portion of testimony elicited at the preliminary hearings, thereby suggesting that appellants "could not have helped but know of [their daughter's drug dealing]", and that "in light of these circumstances retention of the arrest records is in the interests of society..." Nothing could be more vague and less persuasive.

No analysis of Mr. and Mrs. Wexler's particular cases was made, nor special facts cited which convince us of the necessity of retaining their arrest records. The mere assertion of a general interest in maintaining accurate records of those accused of crime is not convincing. *Commonwealth v. Welford, supra.* Thus, we believe that the Commonwealth has not proffered compelling evidence to justify the retention of Martin and Estelle Wexler's arrest records and conclude the hearing court abused its discretion in not ordering expungement.

## II.

Our analysis now turns to the petition to expunge the arrest record filed on behalf of appellant Vicki Wexler. As we previously noted, Miss Wexler entered into a consent decree pursuant to the Juvenile Act then in effect.[3] A consent decree is a "device for placing an allegedly delinquent child under the supervision of the probation department prior to, and as an alternative to, adjudication, thus avoiding the potential stigma attached to an adjudication of delinquency." (footnote omitted) Packel, *A Guide to Pennsylvania Delinquency Law*, 21 Vill.L.Rev. 1, 61–62 (1975).

3. Section 8.1 of the Juvenile Act, *supra*, note 2, provided, in pertinent part,

"(a) At any time after the filing of a petition and before the entry of an adjudication order, the court may, on Motion of the district attorney or that of counsel for the child, suspend the proceedings, and continue the child under supervision in his own home, under terms and conditions negotiated with probation services and agreed to by all parties affected...".

The consent decree allows for pretrial probation similar to the Accelerated Rehabilitative Disposition [4] program available to adults. Klein, *A Practical Look at the New Juvenile Act*, 12 Duq.L.Rev. 186, 207 (1973). Either the district attorney or the child may move to suspend the proceedings and continue the child under supervision in his or her own home under negotiated conditions. 11 P.S. § 50–305(a), reenacted 42 Pa.C.S.A. § 6340(a); *Cf.*, Pa.R.Crim.P. 175.

If the child objects, the Court must proceed to findings, adjudication and disposition. 11 P.S. § 50–305(b), reenacted 42 Pa.C.S.A. § 6340(b), *Cf.*, Pa.R.Crim.P. 179(d). A consent decree remains in effect for six months unless the child is discharged sooner, 11 P.S. § 50–305(c), reenacted 42 Pa.C. S.A. § 6340(c),[5] and, if application is made before the expiration of the six month period, a consent decree may be extended by an additional six months. *Id.*

If a new petition is filed alleging a delinquent act during the consent decree probation period, or if the child does not comply with its terms, the petition may be reinstated and the child tried as if no consent decree had been imposed. 11 P.S. § 50–305(d), reenacted 42 Pa.C.S.A. § 6340(d), *Cf.*, Pa.R.Crim.P. 184. If a child is discharged by the probation service or if the consent decree expires without reinstatement of the petition, the child may not be proceeded against for the same offense alleged in the petition. 11 P.S. § 50–305(e), reenacted 42 Pa.C.S.A. § 6340(e), *Cf.*, Pa.R. Crim.P. 185.

This somewhat lengthy comparison of a consent decree under the Juvenile Act with the Rules of Criminal Procedure relating to ARD is vital to our consideration of appellant Vicki Wexler's request for expungement of her arrest record. The Superior Court dealt with the import of the completion of an ARD program by one who later petitioned for expungement of his or her arrest record in *Commonwealth v. Briley, supra.*

4. Pa.R.Crim.P. 175–85.

5. This section of the statute now requires the Court's approval for earlier discharge.

The Court there held that when an accused is held for trial following a preliminary hearing but thereafter successfully completes an ARD program, "the Commonwealth has the burden of justifying the retention [of the arrest record]." *Commonwealth v. Briley, supra,* 278 Pa.Super. at 370, 420 A.2d at 586. The Superior Court reached this conclusion following a comparison of Mr. Briley's case to prior expungement decisions of that court, as described in Part I of this opinion. Because the Commonwealth was forever barred from convicting appellant in *Briley* of the charges lodged, the Court determined that in practical effect, the decision to place Mr. Briley in the ARD program was "not much different" from a jury's acquittal. Further, there was no affirmative evidence that the Commonwealth would have failed in its proof if Mr. Briley had been tried. Rather, by suggesting placement of appellant Briley in the ARD program, the "Commonwealth demonstrated its belief that the nature of appellant's offense and his background and character were such that the interests of society would be best served were he not prosecuted, but diverted out of the criminal justice system as quickly as possible." *Id.* *See also Commonwealth v. Welford, supra.*

■ In the present case the Probation Department and the Court demonstrated their belief that the interests of Vicki Wexler and society would be best served by the entry of a consent decree rather than a finding of delinquency on record. 11 P.S. § 50–320, reenacted, 42 Pa.C.S.A. § 6341(b).

Four years have passed since the incident which lead to Vicki Wexler's arrest, and she has not been involved in further criminal activity. The original consent decree was for a twelve-month period; she was released from probation after six months.

At the time of the expungement hearing, Mr. Wexler alleged that his daughter was working as a cashier and that they [the parents] had no additional problems with her. Appellant Vicki Wexler was seventeen years old at the time of the arrest and had no prior criminal record.

The Commonwealth asserted a two-fold argument why it wished to retain Vicki Wexler's arrest record. The district attorney asserted at the expungement hearing, "[t]he record is sealed pursuant to the juvenile act . . . there is no danger [in retaining the arrest record]." In regard to such a claim, Professor Adrian Gough has noted,

"... Because the court records are commonly made confidential by statute or court practice, [footnote omitted] employers, licensing agencies, and other persons seeking information usually resort to police files, where they all too often gain access... It is apparent that the devastation of arrest may well be much greater in the case of a juvenile...".

Gough, *The Expungement of Adjudication Records of Juvenile and Adult Offenders: A Problem of Status,* 1966 Wash. U.L.Q. 147, 171–72 (1966). (Hereinafter Gough).

The second aspect of the Commonwealth's argument involved its concern that should Vicki Wexler ever be charged with criminal activity in the future, "the Commonwealth should have the right for the judge, or judges, whoever would consider the case, to be able to review what she's done throughout her whole life." The assertion of a general policy opposing expungement in all cases is not persuasive. "[T]he mere assertion of a general interest in maintaining accurate records regarding those accused of crime does not outweigh . . . [a] specific, substantial interest in clearing . . . [one's] record..."[6] *Commonwealth v. Welford, supra,* 279 Pa.Super. at 303, 420 A.2d at 1345.

■ Thus, where, as here, the Commonwealth cites no overriding interest in retaining her arrest record, we conclude the hearing court abused its discretion in not ordering expungement.

The Order of the Court of Common Pleas is reversed and remanded with instructions to enter an Order expunging the record of appellants' arrests.

6. For a discussion of the basis for an accused's substantial interest in his good name and freedom from the prejudice resulting from an arrest record, *See,* Gough.