COMMONWEALTH of Pennsylvania, Appellee

v.

Christopher HANNA, Appellant.

Superior Court of Pennsylvania.

Argued June 24, 2008.

Filed Jan. 14, 2009.

Cheryl J. Sturm, Chadds Ford, for appellant.

Peter Hobart, Asst. Dist. Atty., West Chester, for Com., appellee.

BEFORE: LALLY–GREEN, KLEIN, and GANTMAN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Christopher Hanna, appeals from the order entered on December 17, 2007, denying his petition to expunge. We vacate and remand.

¶ 2 The trial court summarized the facts of the case as follows:

In early December, 2003, Defendant, by the admission of his plea, "received three laptop computers from Angelo Hicks. He told me CCIU [Chester County Intermediate Unit] was getting rid of the computers. I should have known that he had taken the computers from CCIU without authority to do so. I turned on one of the computers and I learned it was working and belonged to CCIU. I should have called the police or taken immediate steps to return it to CCIU and I did not."

As a result of this incident, Defendant was charged with [34 counts, including burglary, criminal trespass, theft by unlawful taking, receiving stolen property, criminal mischief, institutional vandalism, unlawful use of a computer, computer theft, computer trespass, and conspiracy to commit many of those crimes]. Defendant waived his preliminary hearing on March 8, 2004. The next day, Cheryl Sturm, Esquire entered her appearance on Defendant's behalf.

On August 13, 2004, Defendant pled guilty to one count of receiving stolen property. With reference to the thirty-three charges to which he did not plead, Defendant's written Guilty Plea Colloquy states that "ALL COUNTS NOT DISPOSED OF ABOVE (NOR DISPOSED OF PURSUANT TO PLEA BARGAIN, ATTACHED HERETO) INCLUDING SUMMARY OFFENSES AT THE ABOVE INFORMATION NUMBER(S), ARE WITHDRAWN." At the sentencing hearing, Judge Gavin stated "to the extent that there are counts that do not merge, they are dismissed, cost on you." N.T. 8/13/04 p. 6. Ms. Sturm signed the Guilty Plea Colloquy as Defendant's counsel and was present for the sentencing hearing.

Pursuant to the terms of the plea, Defendant was sentenced to three years probation, a $100 fine and costs. Defendant completed all of the conditions of his probation without incident during the first year and was placed on non-reporting probation as of October 6, 2005. On March 2, 2006 his probation file was closed.

On November 26, 2007 Defendant petitioned to expunge the thirty-three charges to which he had not entered a plea. On December 11, 2007 a hearing was held and Defendant's petition was denied by our Order entered December 17, 2007.

Defendant filed an appeal on January 15, 2008. On February 1, 2008 Defendant filed a Statement of Matters Complained of on Appeal raising one claim of error: "The court erred in holding that *Commonwealth v. Lutz*, 788 A.2d 993 (Pa.Super.2001) precluded expungement of non-conviction data pursuant to 18 Pa.C.S. § 9122; unlike the *Lutz* case, the Defendant was not bound over for trial after a preliminary hearing, the terms of the plea agreement were not spread on the record, there was no factual basis for the most serious charges and the prosecution dropped the most serious charges."

Trial Court Opinion, 2/19/2008, at 1–2 (footnote omitted). The trial court issued a Pa.R.A.P. 1925 opinion on February 19, 2008.

¶ 3 Appellant raises one issue on appeal:

Whether the Court erred in holding that *Commonwealth v. Lutz*, 788 A.2d 993

(Pa.Super.2001), precluded expungement of the non-conviction data pursuant to 18 Pa.C.S. § 9122; unlike the *Lutz* case, the written plea colloquy says the remaining charges will be withdrawn; the defendant was not bound over for trial after a preliminary hearing; the terms of the plea agreement were not spread on the record; there was no factual basis for the most serious charges and the prosecution dropped the most serious charges.

Appellant's Brief at 1–2.

¶ 4 Appellant argues that the trial court erred in denying his petition to expunge. Appellant argues that the facts of his case are distinguishable from the facts of *Lutz*, where this Court upheld the trial court's decision to deny an expungement petition without a hearing.

¶ 5 Before addressing *Lutz* directly, we will review the law of expungement more generally. "The decision to grant or deny a request for expungement of an arrest record lies in the sound discretion of the trial judge, who must balance the competing interests of the petitioner and the Commonwealth. We review the decision of the trial court for an abuse of discretion." *Commonwealth v. Rodland*, 871 A.2d 216, 218 (Pa.Super.2005) (citation omitted). This Court explained the nature of the right to expungement as follows:

In this Commonwealth, there exists the right to petition for expungement of a criminal arrest record. This right is an adjunct of due process and is not dependent upon express statutory authority. In *Commonwealth v. Wexler*, [494 Pa. 325, 431 A.2d 877, 879 (1981) ], the seminal case on expungement hearings in the Commonwealth, our Supreme Court defined the responsibilities of a court as it decides whether to expunge an arrest record: "In determining whether justice requires expungement, the court, in

each particular case, must balance the individual's right to be free from the harm attendant to maintenance of the arrest record against the Commonwealth's interest in preserving such records." Our Court has long recognized that the Commonwealth's retention of an arrest record, in and of itself, may cause serious harm to an individual. *See Commonwealth v. Malone*, [244 Pa.Super. 62,] 366 A.2d 584, 588 (Pa.Super.1976) (noting possible effects of maintaining an arrest record, including economic and non-economic losses and injury to reputation).

*Commonwealth v. A.M.R.*, 887 A.2d 1266, 1268 (Pa.Super.2005) (footnote omitted).

¶ 6 If the defendant is convicted of a crime, he is not entitled to expungement except under the extremely limited circumstances permitted by statute. *Commonwealth v. Maxwell*, 737 A.2d 1243, 1244 (Pa.Super.1999), *citing* 18 Pa.C.S.A. § 9122. At the opposite extreme, if the defendant is acquitted, he is generally entitled to automatic expungement of the charges for which he was acquitted. *Commonwealth v. D.M.*, 548 Pa. 131, 695 A.2d 770 (1997); *cf. Rodland*, 871 A.2d at 219 (where the defendant is acquitted of some charges and not others, the court should expunge the acquitted charges unless the Commonwealth "demonstrates to the trial court that expungement is impractical or impossible under the circumstances").

¶ 7 Unsurprisingly, the cases posing the most difficulty fall in between these extremes. We begin with our Supreme Court's case law. In *Wexler*, 431 A.2d at 880, the Commonwealth *nolle prossed* charges against a defendant based on the prosecutor's assessment that it could not prove the charges beyond a reasonable doubt. The Court held that under those circumstances, the defendant was entitled to an expungement hearing where the

Commonwealth bore a heavy burden of producing compelling evidence that the arrest records should be retained, using a multi-factor test.[1] The *Wexler* Court held that the same standard also applied where the defendant successfully completed an ARD program or consent decree. The Court reasoned that both dispositions reflected the Commonwealth's assessment that the defendant should not be prosecuted, but rather should be rehabilitated. *Id.* at 334–335, 431 A.2d 877. In 1997, our Supreme Court re-affirmed *Wexler* by holding that "all the factors listed in *Wexler,* and similar additional considerations, should be evaluated in expunction cases which are terminated without conviction for reasons such as *nolle prosequi* or ARD." *D.M.,* 695 A.2d at 773.[2]

¶ 8 Our Supreme Court has not yet directly addressed a case where the Commonwealth drops certain charges and the defendant enters a guilty plea to other charges. This Court has addressed variations on this theme on a number of occasions. In *In re Pflaum,* 305 Pa.Super. 600, 451 A.2d 1038 (1982), the defendant "was charged with burglary, criminal trespass, theft and disorderly conduct. Following a hearing before a district justice all charges were dropped except for the disorderly conduct charge to which appellant pled guilty." *Id.* at 1039. The *Pflaum* opinion does not indicate whether the Commonwealth's decision to drop the other charges was the result of an explicit agreement with the defendant. The defendant moved to expunge the dropped charges. The trial court denied this petition without a

hearing. This Court reversed, holding that: (1) the defendant was entitled to a hearing; (2) the Commonwealth bore a heavy burden of proof at the hearing; (3) the fact that the defendant pled guilty to one charge does not imply his guilt as to other charges; and (4) based on all of the circumstances, the defendant was in fact entitled to expungement. *Id.* at 1040–1042.

¶ 9 In *Commonwealth v. Maxwell,* 737 A.2d 1243 (Pa.Super.1999), "pursuant to a plea agreement [the defendant] pled guilty to simple assault and indecent exposure. The remaining charges were *nolle prossed.*" The defendant moved for expungement, which the trial court denied based on the fact that the defendant pled guilty to some of the charges. This Court reversed and remanded. Noting that the facts of *Maxwell* were "similar" to *Pflaum,* we held that the defendant was entitled to a *Wexler* hearing as to the charges that were *nolle prossed. Id.* at 1245.

¶ 10 In *Lutz,* 788 A.2d at 995, this Court took a different approach to expungement where the Commonwealth explicitly agreed to "dismiss" charges "as part of a negotiated plea bargain in exchange for his guilty plea to one count of aggravated assault." The defendant moved to expunge the dismissed charges; the trial court denied the petition without a hearing. This Court affirmed, and relied extensively on the trial court's opinion for its reasoning.

¶ 11 The *Lutz* Court reasoned as follows. A *nolle prosse* is essentially a decision by

---

1. The *Wexler* factors "include the strength of the Commonwealth's case against the petitioner, the reasons the Commonwealth gives for wishing to retain the records, the petitioner's age, criminal record, and employment history, the length of time that has elapsed between the arrest and the petition to expunge, and the specific adverse consequences

the petitioner may endure should expunction be denied." *Wexler,* 431 A.2d at 879.

2. As noted above, the primary holding of *D.M.* was its clear announcement of a rule that expungement should be automatic in cases of outright acquittal.

the Commonwealth that there is insufficient evidence to support the charges at the present time, with the caveat that the Commonwealth may reinstate the charges later. *Id.* at 999. In contrast, the Commonwealth's decision to drop charges pursuant to a plea agreement carries no such implicit admission that proof is lacking. Rather, that decision is simply part of a bargain with the defendant to avoid a trial in exchange for a plea to lesser charges. *Id.* at 1000. Such a bargain is "quasi-contractual." If the court then expunged the dismissed charges, the court would "leave no accurate record of the contractual relationship entered into by [Appellant] and the Commonwealth." *Id.* "In the absence of an agreement as to expungement, Appellant stands to receive more than he bargained for in the plea agreement if the dismissed charges are later expunged." *Id.* at 1001. Thus, we held that the defendant was not entitled to expungement.

¶ 12 In *Rodland,* the Commonwealth charged the defendant with a large number of arson-related charges under various case numbers. Appellant was acquitted of some charges, and convicted of others, while still others were *"nolle prossed"* as part of a *nolo contendere* plea with the Commonwealth. *Rodland,* 871 A.2d at 221. While we recognized our decision in *Lutz,* we remanded for an evidentiary hearing based on the chaotic state of the record, and outstanding factual disputes as to the true nature of the agreement that had been reached.

¶ 13 Finally, in *A.M.R.,* a school librarian was charged with library theft and misapplication of entrusted property. The Commonwealth then agreed to "drop" all charges in exchange for the defendant's agreement to resign from his job. The defendant then moved to expunge the charges. The trial court denied the peti-

tion. In an opinion by now-Justice McCaffery, this Court reversed and held that the defendant was entitled to expungement. Departing somewhat from the *Lutz* formulation of the law, we wrote that "where the Commonwealth has dropped the charges against a petitioner or otherwise has failed to carry its burden of proof beyond a reasonable doubt, the Commonwealth must bear the burden of showing why an arrest record should not be expunged." *A.M.R.,* 887 A.2d at 1268, *citing Rodland,* 871 A.2d at 220. The burden of proof remains on the Commonwealth. *Id.* at 1269.

¶ 14 Applying the five *Wexler* factors, the *A.M.R.* Court held that the trial court abused its discretion in failing to expunge the record. The court noted that the mere fact that the Commonwealth was prepared to prosecute a case of library theft was not dispositive, and that all of the remaining factors must be considered. *Id.* at 1270. This Court held that on balance, the 24–year–old librarian's interest in being free from the career-stifling effects of an arrest record outweighed any interest the Commonwealth had in retaining the records. *Id.* at 1270–1271.

¶ 15 We now turn to the facts of the instant case. On December 11, 2007, the trial court heard oral argument on Appellant's petition to expunge. Appellant's counsel argued that Appellant was 26 years old at the time of the offense, had no prior criminal record, and successfully served his probation. Appellant is a high-school graduate with college credits and technology-class credits. He is married and supports three children. According to counsel, the dismissed charges were having a serious adverse effect on Appellant's employment prospects in the computer field. N.T., 12/11/07, at 3–6. Counsel argued that "the equities are on [Appellant's] side," and that the Commonwealth has presented no basis for opposing ex-

pungement. *Id.* at 8–9. The prosecutor countered that a *Wexler* balancing test is unnecessary and improper because the instant case is controlled by *Lutz.* *Id.* at 10. The prosecutor added that the Commonwealth was prepared to prove its case in full. Specifically, the Commonwealth could have established that Appellant solicited a juvenile to steal laptops from the CCIU, and even drove the juvenile to the CCIU for that purpose. *Id.* at 10–11.

¶ 16 The court issued its order one week later, on December 17, 2007. The trial court relied on *Lutz* to support its decision to deny expungement. The court reasoned as follows. Appellant pled guilty to one count of receiving stolen property. The written guilty plea colloquy indicates that all other charges were "**withdrawn.**" Trial Court Opinion, 2/19/2008, at 6. At the plea/sentencing hearing, the trial judge remarked that "to the extent there are counts that do not merge, they are **dismissed**, cost on you." *Id.* at 5. As in *Lutz*, the totality of the circumstances indicated a fully-negotiated agreement for the Commonwealth to permanently dismiss the 33 remaining charges in exchange for Appellant's guilty plea to the one remaining charge. *Id.* at 7–8. According to the trial court, the record contains no indication that the Commonwealth intended to "*nolle prosse*" any of the charges, as that term is used in *Wexler* to mean an admission that the Commonwealth cannot sustain its burden of proof. The court also noted that the Commonwealth did not move to *nolle prosse* any charges under Pa.R.Crim.P. 585, and the trial court never granted any such petition. *Id.* at 3. The court recognized that according to the docket, the remaining 33 charges were "*nolle prossed;* " however, the court held that this was a mere clerical error. *Id.* at 6.

¶ 17 On appeal, Appellant challenges many of the trial court's factual premises. Appellant admits that he did plead guilty to one charge, but he argues that there was no **agreement** with the Commonwealth to drop the remaining charges. Appellant's Brief at 16. According to Appellant, the Commonwealth simply withdrew, or *nolle prossed*, the remaining charges without an explicit agreement. *Id.* at 17–20. Appellant further suggests that the Commonwealth would have been unable to proceed to trial on the most serious charges.

¶ 18 Unfortunately, as in *Rodland*, the current state of the certified record is inadequate to resolve these factual disputes. First, the guilty plea colloquy is not part of the certified record. Moreover, the record does not contain a clear recitation of the agreement, if any, between Appellant and the Commonwealth. The hearing that took place on December 11, 2007 consisted primarily of oral argument rather than sworn testimony. Thus, we are constrained to vacate the existing order and remand for further proceedings so that the trial court may resolve these factual disputes, and support its factual findings with evidence that may be found in the certified record.

¶ 19 In doing so, we note the following. *Lutz* is arguably inconsistent with broad language from this Court [3] and our Supreme Court, [4] as well as the prevailing

3.  *A.M.R.*, 887 A.2d at 1268 ("where the Commonwealth has dropped the charges against a petitioner or otherwise has failed to carry its burden of proof beyond a reasonable doubt, the Commonwealth must bear the burden of showing why an arrest record should not be expunged.")

4.  *D.M.*, 695 A.2d at 772 ("We reiterate the authority of *Wexler* and the balancing test approved therein as the means of deciding

trend of our case law. Nevertheless, we are not free to ignore *Lutz* outright, because it has not been overruled by this Court *en banc* or by our Supreme Court. We also recognize that in any given case, there may be debate over the factual question of whether the parties entered into the type of "quasi-contractual" agreement described in *Lutz*. As noted above, this is such a case. In keeping with the spirit of the case law discussed above, we now further hold that the Commonwealth bears the burden of proving on remand with clear and convincing evidence that *Lutz* applies. If the Commonwealth fails to carry that heavy burden, then the *Wexler* test will apply. We also urge the court to be mindful of the public policy considerations consistently articulated by our Supreme Court and this Court concerning the value of expungement to an individual.[5] *See A.M.R.* After the remand hearing, the court is free to issue a new order granting or denying expungement as to any or all of the charges in accordance with the principles set forth in this Opinion.

¶ 20 Order vacated. Remanded for an evidentiary hearing consistent with this Opinion. Jurisdiction relinquished.

¶ 21 KLEIN, J.: files Concurring Opinion.

CONCURRING OPINION BY KLEIN, J.:

¶ 1 I agree that the decision of the trial judge should be reversed and remanded. However, I would directly remand for a *Wexler*[6] hearing to determine whether the Commonwealth can carry its heavy burden of proof that the arrest records should be retained. There seems to be no evidence of an "agreement" that Hanna never ask for expungement, so therefore I see no reason not to have a *Wexler* hearing.

¶ 2 Further, I do not agree that *"Lutz*[7] remains good law," assuming it ever *was* "good" law.

¶ 3 I believe that *Lutz* conflicts with both *Commonwealth v. D.M.*, 548 Pa. 131, 695 A.2d 770 (1997), and *In re Pflaum*, 305 Pa.Super. 600, 451 A.2d 1038 (1982), and those cases cannot stand together. Moreover, I do not believe that *Lutz* can stand together with subsequent cases, *Commonwealth v. Rodland*, 871 A.2d 216 (Pa.Super.2005), and *Commonwealth v. A.M.R.*, 887 A.2d 1266 (Pa.Super.2005).

¶ 4 A practical look at the real world of the criminal courtroom compels my result. As noted by the majority, if there is a conviction nothing is expunged, and if there is an acquittal of all charges everything must be expunged. If the charges are *nolle prossed*, the Commonwealth bears the heavy burden under *Wexler* to

petitions to expunge the records of all arrests which are terminated without convictions except in cases of acquittals.").

5. We recognize the danger to a person's reputation and job prospects that could arise where the Commonwealth charges a defendant with counts that, as of the time of the plea agreement, have no viable prospect of success. For example, the Commonwealth could initially and in good faith charge the defendant with serious counts, but then realize that they are unfounded or otherwise unprovable. If the Commonwealth fails to *nolle prosse* those charges, and instead enters into a plea agreement to drop those "overcharged" counts "in exchange for" a guilty plea to a lesser charge, then, under *Lutz*, the greater charges could not be expunged even if the Commonwealth had no chance of success at trial. In our view, such a result would be unfair and inconsistent with both the language and intent of *Wexler* and its progeny.

6. *Commonwealth v. Wexler*, 494 Pa. 325, 431 A.2d 877 (1981).

7. *Commonwealth v. Lutz*, 788 A.2d 993 (Pa.Super.2001).

show why there are good reasons to maintain the criminal record. All of the cases but *Lutz* stand for the proposition that if some, but not all, of the charges are *nolle prossed,* the *Wexler* rule remains, holding the Commonwealth to its burden of showing why the dropped charges should not be expunged. Of course, there may well be reasons why the record should remain, such as the necessity of maintaining the record to explain the charges to which the defendant was convicted or pled guilty. But the trial court in this case did not conduct such an inquiry.

¶ 5 Of course, if there is an agreement to never move to expunge the *nolle prossed* charges, there would be a different story. However, there almost never is an explicit agreement regarding whether or not the charges which were *nolle prossed* or dropped can or cannot be expunged. Absent something more, it should be assumed that there is *no* such agreement. Moreover, generally a defendant will as a practical matter want to wait a few years to be able to show good conduct to prevail at a *Wexler* hearing before moving for expungement.

¶ 6 It is not up to the defendant to interpret whether or not the case was *nolle prossed* because the Commonwealth had enough evidence or did not have enough evidence. It should be presumed that if a prosecutor *withdraws* charges or *nolle prosses* a case, he or she believed there was a good reason to drop them, normally that means problems of proof. If a case is *nolle prossed,* it is *nolle prossed.* In other words, it should not make any difference whether the prosecutor puts on the record whether or not he or she has sufficient proof.

¶ 7 I note that in *Lutz,* there were other reasons for which an expungement could have been denied,[8] and it is may have been for this reason that Judge Musmanno concurred in the result of the panel's decision.

¶ 8 I believe that any question as to the continued viability of *Lutz* was put to rest in *Commonwealth v. Rodland,* 871 A.2d 216 (Pa.Super.2005). Writing for a unanimous panel, Judge Maureen Lally–Green, with my joinder and that of Judge Justin Morris Johnson, said:

> We next consider the charges the Commonwealth *nolle prossed* pursuant to an agreement with Appellant. Where *nolle prosse* is the reason for termination without conviction, the trial court is to analyze the case according to the factors set forth in a controlling statute or in *Commonwealth v. Wexler,* [494 Pa. 325,] 431 A.2d 877 (Pa.1981). *D.M.,* 695 A.2d at 773. Since no statute controls the instant case, we examine the *Wexler* factors.

*Rodland,* 871 A.2d at 219.

¶ 9 It is true that *Rodland* involved a *nolle prosse* and *nolo contendere* plea while there was a guilty plea in *Lutz,* but I do not believe that is a critical distinction.

¶ 10 In *D.M.,* our Supreme Court said, "We reiterate the authority of *Wexler* and the balancing test approved therein as the means of deciding petitions to expunge the records of **all** arrests which are terminated without convictions except in cases of acquittals." 695 A.2d at 772 (emphasis add-

---

8. In particular, this Court noted that "Recklessly Endangering Another Person is a lesser included offense of Aggravated Assault, [and] by pleading guilty to Aggravated Assault, [Lutz] ... admitted full culpability to Recklessly Endangering Another Person. For this reason, we would assert that expungement is clearly not appropriate in regards to Recklessly Endangering Another Person. Similarly, Simple Assault is a lesser included offense of Aggravated Assault and [Lutz] therefore admitted culpability for Simple Assault by pleading guilty to Aggravated Assault." *Lutz,* 788 A.2d at 1001.

ed). I think all means all. If a charge is dismissed without conviction or acquittal, whether or not it is part of a plea negotiation including other charges, the *Wexler* test should apply.

¶ 11 I believe that since *Lutz* is inconsistent with many other cases, we cannot say it is good law but have to pick between *Lutz* and several other cases. I would pick the other cases and say, absent some extraordinary situation where a defendant agreed never to move to expunge *nolle prossed* charges, that when the Common-

wealth *nolle prosses* charges as part of a negotiated guilty plea, one need not speculate on the motivation for the *nolle prosse.* If the defendant moves to expunge the *nolle prossed* charges, the *Wexler* test should apply.