¶ 20 Despite this failure, the Commonwealth nevertheless afforded Appellant more than 30 days notice prior to sentencing of its intent to pursue a mandatory minimum sentence: the Commonwealth filed its notice of intent on August 16, 2007; Appellant was sentenced on September 20, 2007. This post-plea, but presentence notice afforded him ample time in which to prepare a motion to withdraw his guilty plea. Appellant declined this opportunity and chose to proceed with the sentencing. *See Commonwealth v. Leonhart,* 358 Pa.Super. 494, 517 A.2d 1342, 1346 (1986) (vacating judgment of sentence because "the sentencing transcript reveal[ed] that the prosecutor only introduced the applicability of [a mandatory sentencing provision] near the end of the proceedings, taking appellant, his counsel and the trial court by surprise"). By opting to proceed with sentencing, Appellant waived his contention that his guilty plea was not knowing because he had not been notified of the application of the mandatory minimum sentence.

¶ 21 Judgment affirmed.

**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**V.A.M., Appellant.**

Superior Court of Pennsylvania.

Argued March 17, 2009.

Filed Aug. 10, 2009.

Jason A. Snyderman, Philadelphia, for appellant.

Michael Erlich, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

BEFORE: BENDER, SHOGAN, JJ., and McEWEN, P.J.E.

OPINION BY BENDER, J.:

¶ 1 V.A.M. (Appellant) appeals from the order denying his petition for expungement of his arrest and conviction record after he was granted a new trial on charges of rape, involuntary deviate sexual intercourse, robbery, and criminal conspiracy and the re-trial did not take place because the Commonwealth nolle prossed all charges, having failed to locate the complaining victim. We reverse and remand.

¶ 2 The trial court set forth the factual and procedural history of this case as follows:

In 1986, Appellant, [V.A.M.], was arrested and subsequently charged with Rape, Involuntary Deviate Sexual Intercourse, Robbery, and Criminal Conspiracy. He was later convicted of these crimes in 1987 and sentenced to 12 to 24 years in prison. [V.A.M.] served more than ten tears in prison for these crimes until his convictions were vacated in 1996 by the Honorable Joseph Papalini because there was new evidence presented that DNA of three men was found on the victim's clothing, but none of the DNA samples matched [V.A.M.'s] DNA. Once the convictions were vacated, a new trial was ordered by Judge Papalini so this new evidence could be considered. The Commonwealth thereafter nolle prossed all charges against [V.A.M.].

[V.A.M.] filed a Petition for Expungement of his criminal record for these arrests and convictions and a hearing was held before this Court on March 5, 2008, where the Court denied [V.A.M.'s] Petition. [V.A.M.] filed this timely appeal of the Court's decision on April 2, 2008.

On April 7, 2008, this Court ordered [V.A.M.] pursuant to Pa.R.A.P. 1925(b) to file with the Court a Concise Statement of Matters Complained of on Appeal. [V.A.M.] filed his [Rule] 1925(b) Statement with the Court on April 28, 2008.

At [V.A.M.'s] hearing on March 5, 2008, Bill Fisher, the Assistant District Attorney in Philadelphia, who tried [V.A.M.'s] original case back in 1987, testified to the evidence that was presented at [V.A.M.'s] trial that led to his conviction by a jury. This evidence included the victim making a clear identification of [V.A.M.]; a composite sketch of [V.A.M.] drawn a few days after the victim was raped that matched a photograph of [V.A.M.]; and the testimony of the unwavering victim. (N.T., 3/5/08, pgs. 29–36). When asked whether the DNA results, showing none of [V.A.M.'s] DNA on the victim's underpants, had changed his opinion on the case, he stated that "In terms of excluding the defendant as the perpetrator of the crime, yes, I believe there is something wrong with the DNA. I don't believe you can exclude this Defendant based on that DNA." (N.T., 3/5/08, pg. 48). The reasons Mr. Fisher gave for this belief were that the victim testified that only two men had raped her and there was the semen of three men found on her underpants and that DNA can last a very long time on garments and the semen found did not have to be from that particular incident. (N.T., 3/5/08, pg. 42).

Charlie Ehrlich, Assistant District Attorney, who was chief of the Family Violence and Sexual Assaults Unit in 1996, when the case against [V.A.M.] was nolle prossed, testified at the hearing in regard to why the case was nolle prossed. He testified that the reason the case was nolle prossed was because the District Attorney's Office could not find the victim, and if they had, they would have prosecuted the case. (N.T., 3/5/08, pg. 56). He was also asked if the DNA results affected his opinion of the case, and stated that "he does not feel that the results exclude [V.A.M.] as being the perpetrator in this case." (N.T., 3/5/08, pg. 57). His reasons for this include: the fact that there are stains on the victim['s] underpants from other people besides [V.A.M.] does not exclude him as DNA or biological stains can stay on panties for many years; the fact that a defendant does not have to ejaculate during a rape; and the fact that an adult

female can be having sex with other partners where biological stains can stay on the panties even after they are washed. (N.T., 3/5/08, pgs. 57–58).

Trial Court Opinion (T.C.O.), 7/1/08, at 1–3.

¶ 3 As indicated by the trial court, Appellant appealed to this Court from the order denying his petition for expungement. In this appeal, Appellant raises the following issues for our review:

1. Did the Trial Court err as a matter of law in holding that it lacked the authority to expunge all records relating to [V.A.M.'s] arrest, subsequent trial and resulting prison term even though the Commonwealth chose to *nolle pros* all charges after [V.A.M.'s] convictions were vacated and he was granted a new trial based on after-acquired evidence?

2. Did the Trial Court err as a matter of law by first denying [V.A.M.'s] Petition to Expunge without relying on any of the factors set forth in *Commonwealth v. Wexler*, 494 Pa. 325, 431 A.2d 877 (1981)[,] and then by improperly applying *Wexler* in its 1925(b) Opinion by: (i) wrongly shifting the burden to the Petitioner; (ii) finding that the Commonwealth's case was strong despite exculpatory DNA evidence that it could not explain beyond theoretical possibilities and based *solely* on the testimony from two prosecutors who, unremarkably, testified that they subjectively believed their case was strong but failed to introduce any actual evidence to support their contention; and (iii) wholly ignoring every other *Wexler* factor, each of which strongly supports expungement?

3. Did the Trial Court err as a matter of law by denying [V.A.M.'s] Petition to Expunge because the Commonwealth has a general interest in maintaining arrest records for crimes as serious as rape?

Appellant's brief at 2 (footnote omitted).

¶ 4 We note as does the trial court that no Pennsylvania case law exists that deals "directly with an expungement petition to expunge charges that were nolle prossed after a new trial was granted on the basis of post trial DNA evidence." T.C.O. at 4. Since none of the expungement cases that have been decided in this Commonwealth concern a factual scenario like the one presently presented to this Court, we begin by quoting a review of expungement law that was most recently set forth in *Commonwealth v. Hanna*, 964 A.2d 923 (Pa.Super.2009). The *Hanna* opinion explained:

"The decision to grant or deny a request for expungement of an arrest record lies in the sound discretion of the trial judge, who must balance the competing interests of the petitioner and the Commonwealth. We review the decision of the trial court for an abuse of discretion." *Commonwealth v. Rodland*, 871 A.2d 216, 218 (Pa.Super.2005) (citation omitted). This Court explained the nature of the right to expungement as follows:

In this Commonwealth, there exists the right to petition for expungement of a criminal arrest record. This right is an adjunct of due process and is not dependent upon express statutory authority. In *Commonwealth v. Wexler*, [494 Pa. 325, 431 A.2d 877, 879 (Pa.1981)], the seminal case on expungement hearings in the Commonwealth, our Supreme Court defined the responsibilities of a court as it decides whether to expunge an arrest record: "In determining whether justice requires expungement, the court, in each particular case, must balance the individual's right to be free from the harm attendant to main-

tenance of the arrest record against the Commonwealth's interest in preserving such records." Our Court has long recognized that the Commonwealth's retention of an arrest record, in and of itself, may cause serious harm to an individual. *See Commonwealth v. Malone,* [244 Pa.Super. 62,] 366 A.2d 584, 588 (Pa.Super.1976) (noting possible effects of maintaining an arrest record, including economic and non-economic losses and injury to reputation).
*Commonwealth v. A.M.R.,* 887 A.2d 1266, 1268 (Pa.Super.2005) (footnote omitted).

If the defendant is convicted of a crime, he is not entitled to expungement except under the extremely limited circumstances permitted by statute. *Commonwealth v. Maxwell,* 737 A.2d 1243, 1244 (Pa.Super.1999), *citing* 18 Pa. C.S.A. § 9122.[1] At the opposite extreme, if the defendant is acquitted, he is generally entitled to automatic expungement of the charges for which he was acquitted. *Commonwealth v. D.M.,* 548 Pa. 131, 695 A.2d 770 (Pa.1997); *cf. Rodland,* 871 A.2d at 219 (where the defendant is acquitted of some charges and not others, the court should expunge the acquitted charges unless the Commonwealth "demonstrates to the trial court that expungement is impractical or impossible under the circumstances").
*Hanna,* 964 A.2d at 925.

¶ 5 As noted in *Hanna,* the *Wexler* decision by our Supreme Court is the seminal case on expungement hearings. Also, in *Commonwealth v. Rodland,* 871 A.2d 216 (Pa.Super.2005), this Court discussed a situation where the charges were nolle prossed and the matter terminated without any conviction, indicating that the trial court was to analyze the case according to the factors espoused in *Wexler.* These factors include the following but are not to be considered an exclusive list:

[1] the strength of the Commonwealth's case against the petitioner, [2] the reasons the Commonwealth gives for wishing to retain the records, [3] the petitioner's age, criminal record, and employment history, [4] the length of time that has elapsed between the arrest and the petition to expunge, and [5] the specific adverse consequences the petitioner may endure should expunction be denied.

*Wexler,* 431 A.2d at 879. We are also guided by the decision in *Commonwealth v. A.M.R.,* 887 A.2d 1266, 1268 (Pa.Super.2005), wherein the court stated that "where the Commonwealth has dropped the charges against a petitioner or otherwise has failed to carry its burden of proof beyond a reasonable doubt, the Commonwealth must bear the burden of showing why an arrest record should not be expunged." Moreover, the *A.M.R.* case extensively discussed each of the *Wexler* factors, specifically, directing that all of the factors must be considered. *Id.* at 1270.

¶ 6 Appellant's issues essentially raise arguments concerning a failure by the trial

---

1.  The *Maxwell* court explained:
    In matters which have resulted in a conviction, 18 Pa.C.S.A. § 9122(b)(1) directs that expungement may occur only where the "subject of the information reaches 70 years of age and has been free of arrest or prosecution for ten years" or where that individual "has been dead for three years."

However, where a suspect was charged but not convicted and the court is presented with a petition to expunge, the Commonwealth bears the burden of justifying retention of the arrest record. *Commonwealth v. Wexler,* 494 Pa. 325, 431 A.2d 877 (1981). *Maxwell,* 737 A.2d at 1244.

court to conduct a proper *Wexler* balancing test and a failure by the Commonwealth to meet its burden of showing that its interests in preserving Appellant's criminal record outweigh Appellant's right to be free from harm arising from the maintenance of those records. In response to Appellant's allegation that the trial court did not properly perform the *Wexler* balancing test, the trial court stated:

> In arriving at its decision, the Court placed great weight in the strength of the Commonwealth's case against [V.A.M.], and in this connection notes that [V.A.M.] was never found not guilty, but to the contrary only had his case dismissed when the victim could not appear to testify a second time, which was over ten years later, because she could not be found. Although [V.A.M.] presented some evidence from a private investigator who found the victim's address back in 1996, it could not be conclusively established that the District Attorney's Office could have found the victim. Further, Mr. Fisher and Mr. [Ehrlich] both testified to the strength of the Commonwealth's case against [V.A.M.] and how the DNA results do not mean that [V.A.M.] was not one of the perpetrators of the rape of the victim, but only that he did not ejaculate during the rape. The Court found the testimony of Mr. Fisher and Mr. [Ehrlich] to be entirely reasonable and credible.

> The Court believes that the Commonwealth has a great interest in retaining the arrest record stemming from crimes as serious as rape. The general public should have knowledge of the arrest of a person for rape where they are convicted, and then later are granted a new trial due to DNA evidence. It is in society's best interest to make available to the public any thing indicative of a defendant's potential propensity to commit serious crimes. Specifically in this case, a nolle prosse of [V.A.M.'s] charges, ten years after the incident occurred, because the victim could not be found, is not enough to justify granting the expungement of [V.A.M.'s] arrest record for that crime.

T.C.O. at 4–5.

¶ 7 Keeping in mind that none of the cases cited above (or cases cited in the above identified cases) deal with a situation like the one now before this Court, we, nevertheless, are persuaded from our review of those cases that the burden of showing why Appellant's arrest, conviction and imprisonment should not be expunged remains on the Commonwealth and that the *Wexler* factors are to be applied in this type of case.

¶ 8 Here, the Commonwealth's witnesses testified about the strength of the original case against Appellant and explained their position that the DNA results would not exclude Appellant as the perpetrator. To refute the Commonwealth's testimony regarding the strength of the case, Appellant offered a witness (a private detective) who indicated that by using the methods available in 1996–97 he was able to determine where the victim lived at the time the Commonwealth was searching for her and that the nolle prosse showed that the Commonwealth's case for a re-trial was not strong at all.

¶ 9 The balance of the information received by the court consisted of argument by both attorneys. Some of that information was fact based, but was not supported by testimony or other evidence. Appellant's attorney argued to the court below that Appellant spent 10 years and two months in prison and that 12 years had passed since the conviction was vacated and the new trial ordered (a total of 22

years since the arrest on the rape charge). He also acknowledged that Appellant had a criminal trespass conviction at the time he was 19 years old, a receiving stolen property conviction for accepting a package that contained stolen property while serving the sentence that was vacated, and a defiant trespass conviction for which he received probation, with no convictions occurring since 1998. The Commonwealth responded that Appellant had been arrested a total of 11 times, however, no time frame or details as to the alleged crimes were provided. Apparently, none of those arrests resulted in convictions. The Commonwealth also argued that there was no showing of prejudice to Appellant if the conviction is not expunged.

¶ 10 Our review of the trial court's opinion setting forth its reasons for denying Appellant's expungement petition reveals that the court only considered the first two factors listed in *Wexler*, namely, finding that the Commonwealth's case against Appellant was strong, and that it is in society's best interest to have available a defendant's "potential propensity to commit serious crimes." T.C.O. at 5. We do not comment on the court's finding that the Commonwealth's case was strong,[2] but we do note that the court in *A.M.R.* recognized that "[t]he 'future case' argument is similarly unpersuasive: the Supreme Court in *Wexler* expressly rejected the argument that a general interest in maintaining an arrest record overrides the individual's interest in expungement." *A.M.R.*, 887 A.2d at 1270. *See also Richardson*, 511 A.2d at 829 (stating that the blot on a person's character stemming from a rape charge outweighs the Commonwealth's valid interests). Therefore, the trial court's reasoning with regard to the second *Wexler* factor is an insufficient basis on which to find that the Commonwealth met its burden pertinent to that factor.

¶ 11 Moreover, contrary to the court's determination that it performed the *Wexler* balancing test and found that "the Commonwealth had met its burden of affirmatively justifying retention of [V.A.M.'s] arrest record," T.C.O. at 4, we conclude that nothing in its opinion addresses the other *Wexler* factors. Beyond this, our review of the record, including the petition for expungement, the order granting a new trial, and the transcript of the hearing, reveals that information necessary to conduct the appropriate *Wexler* review was contained therein. However, without the Commonwealth's submission of this information at the time of the hearing, we are not able to confirm that the court was in possession of this information relating to the other *Wexler* factors. Consequently, we must conclude that the Commonwealth did not carry its burden of proof in this matter and, as a result, we are compelled to conclude that an abuse of discretion was committed. Accordingly, the order denying Appellant's petition to expunge must be reversed.

¶ 12 Order reversed. Case remanded with direction to expunge the record as requested. Jurisdiction relinquished.

¶ 13 Judge SHOGAN files a dissenting opinion.

---

**2.** *Cf. Commonwealth v. Richardson*, 354 Pa.Super. 194, 511 A.2d 827 (1986). In *Richardson*, the appellant, who was a cab driver, was arrested and charged with rape and other crimes he allegedly committed against a female passenger. Although the victim testified at the trial, a mistrial was declared following reference to the appellant's passing of a lie detector test. At the second trial, the victim refused to testify and the case was dismissed and the appellant was discharged. The motion to expunge the arrest was denied. On appeal, this Court reversed, concluding that "we can only speculate as to the strength of the case," *id.* at 829, and only can state that there was sufficient evidence to go to trial.

**DISSENTING OPINION BY SHOGAN, J.:**

¶ 1 While I agree with the Majority's statement of the law in this area, I cannot accept the Majority's conclusion that the trial court abused its discretion under the specific facts of this case.

¶ 2 My review of the record reveals that the trial court was in possession of sufficient information to conduct a balancing test pursuant to *Commonwealth v. Wexler,* 494 Pa. 325, 431 A.2d 877 (1981). Furthermore, the trial court stated that it did conduct the balancing test set forth in *Wexler.* Trial Court Opinion, 7/1/08, at 4. Although some of the information presented to the trial court was in the form of admissions by counsel during argument, it was appropriate for the trial court to have considered such admissions in its application of *Wexler. See Commonwealth v. Johnson,* 961 A.2d 877 (Pa.Super.2008) (stating that counsel represent their clients and their admissions are *prima facie* the admissions of their clients).

¶ 3 Moreover, the fact that the focus of the trial court's 1925(a) opinion was the great weight it placed on the strength of the Commonwealth's case against Appellant does not justify reversal. *See Commonwealth v. Sanders,* 814 A.2d 1248, 1251–1253 (Pa.Super.2003) (stating, in a juvenile decertification matter, that the decertification court "need not address, *seriatim,* the applicability and importance of each factor" it considers and concluding "because reasons exist of record which support the decertification court's decision, we cannot reweigh the factors or evidence presented"). If the Majority finds the trial court's analysis lacking, I believe the more appropriate course would be to remand this matter to the trial court for a supplemental opinion addressing all of the *Wexler* factors in a more thorough fashion. *See, e.g., Commonwealth v. Ragan,* 439 Pa.Super. 337, 653 A.2d 1286, 1288 (1995) (remanding matter to trial court for preparation of supplemental opinion detailing its decision and findings on a weight of the evidence claim). Accordingly, I am constrained to respectfully dissent.