**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**B.C., Appellant.**

Superior Court of Pennsylvania.

Argued March 6, 2007.

Filed Sept. 6, 2007.

---

**13.** Of course, where the claimed hardship is due to the purchase price or is a result of the sale, this does not apply.

**14.** Wilson testified that he intended to have a home office on the property when he purchased it. Transcript of the Meeting of the Plumstead Twp. Zoning Hearing Bd. at 12.

Bradley S. Bridge, Philadelphia, for appellant.

Michael Erlich, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: LALLY–GREEN, KLEIN and TAMILIA, JJ.

OPINION BY KLEIN, J.:

¶ 1 B.C. appeals from the order of the trial court denying his motion for expungement of his arrest record after he was found not guilty by reason of insanity following trial on charges of aggravated assault, simple assault, and recklessly endangering another person. We affirm.

¶ 2 B.C. was charged with a bizarre and violent incident that occurred on April 24, 1989. As recounted by the trial judge:

When police arrived at Appellant's home on April 24, 1989, Appellant was in disarray, his clothes were torn, his left hand was bloody, and he was holding up a Bible saying, "I am your Lord and Savior." N.T., 2/1/06, at 6–7. Appellant who was out of control, forcefully attacked the officer and tried to remove the gun from the officer's holster. *Id.* Appellant was also observed banging his head against the wall and drinking from the toilet bowl. *Id.* According to Appellant's motion in this case, he was diagnosed with schizophrenic disorder.

Trial Court Opinion, 6/7/06, at 2.

¶ 3 In November, 1989, B.C. was found not guilty by reason of insanity. On January 11, 1990, B.C. filed a petition to expunge, which was denied by the Honorable Edward J. Russell. On appeal, this Court affirmed. *Commonwealth v. B.C.*, 3034

PHL 1990, 414 Pa.Super. 666, 599 A.2d 699 (unpublished memorandum, filed August 22, 1991).

¶ 4 On December 8, 2005, B.C. filed another expungement petition. At the hearing, B.C. argued that his arrest record should be expunged because he had no other arrests in 17 years and the arrest record interfered with his ability to obtain employment. B.C. alleged in his petition for expungement that he currently works at Genuardi's Supermarket in Roslyn, and has worked there since 1998, but that he believes his arrest record has interfered with his ability to obtain employment at the post office. Petition to Expunge Criminal Record, ¶ 9. The Commonwealth argued that the maintenance of the record of this violent action is necessary to protect the public. The Honorable Susan I. Schulman denied the petition.

¶ 5 On appeal, B.C. raises two issues. We conclude that neither has merit. In summary:

1. B.C. argues that because he was found not guilty by reason of insanity, his arrest record should be automatically expunged. A *verdict of not guilty by reason of insanity is not the equivalent of a simple acquittal, and therefore there is no automatic expungement.*

2. B.C. argues that under the balancing test of *Commonwealth v. Wexler,* 494 Pa. 325, 431 A.2d 877 (1981), the 17 years that have passed with no other arrests makes it an abuse of discretion not to expunge the record. Because the episode was so violent and there is no evidence of exactly what B.C.'s mental health status has been over the past 17 years, we cannot upset the trial judge's decision. While the Commonwealth has the burden of proof, evidence of B.C.'s mental status over

the past 17 years is in B.C.'s control, not the Commonwealth's. Because that evidence was sketchy, it is not favorable to him.

¶ 6 A detailed discussion follows.

**1. There is no automatic expungement.**

¶ 7 The standard for expungement was first set forth in *Commonwealth v. Wexler, supra.* There, Martin Wexler was arrested and charged with corruption of a minor following a search of his residence and the confiscation of marijuana and drug paraphernalia discovered in the bedroom of his minor daughter, Vicki. Vicki was also arrested at that time and charged with possession of marijuana with intent to manufacture or deliver and criminal conspiracy with another minor, who was also arrested at the scene. Estelle Wexler, Martin Wexler's wife, was arrested and charged with criminal conspiracy and corruption of a minor. The parents' case was *nol prossed,* and the minor entered into a consent decree. Thereafter, both parents and minor petitioned for expungement, which was denied after a hearing. On appeal, this Court affirmed *per curiam.* The Pennsylvania Supreme Court reversed, holding that where the Commonwealth has not met its burden of proof beyond a reasonable doubt, or admits prior to trial that it is unable to bear its burden of proof, the Commonwealth must bear the burden of justifying why the arrest record should not be expunged. *Wexler,* 431 A.2d at 880.

¶ 8 In making the expungement determination, the *Wexler* Court adopted the factors for expungement set forth in this Court's opinion in *Commonwealth v. Iacino,* 270 Pa.Super. 350, 411 A.2d 754 (1979), where we stated:

These [factors] include the strength of the Commonwealth's case against the petitioner, the reasons the Common-

wealth gives for wishing to retain the records, the petitioner's age, criminal record, and employment history, the length of time that has elapsed between the arrest and the petition to expunge, and the specific adverse consequences the petitioner may endure should the expunction be denied.

*Id.* at 759. The *Wexler* Court noted that this was not necessarily an exclusive or exhaustive list, and that other factors may require examination in a particular case. *Wexler*, 431 A.2d at 879.

¶ 9 In *Commonwealth v. W.P.*, 417 Pa.Super. 192, 612 A.2d 438 (1992), this Court applied the *Wexler* test to facts similar to those here, where the defendant was found not guilty of insanity. Once again, the defendant committed a violent attack on a police officer. This Court did state that the Commonwealth must prove by compelling evidence that it was necessary to preserve the criminal arrest record. However, we also noted that "the defense of insanity by its very terms accepts the fact that the actor had engaged in 'the commission of the offense' being tried." *Id.* at 442, citing 18 Pa.C.S.A. § 315(b). In *W.P.*, we held that the Commonwealth had met its burden of showing a compelling reason to retain defendant's arrest record, pointing to the circumstances surrounding defendant's arrest, his admission to commission of the assault, the continuing nature of his treatment for mental illness, as well as defendant's uncharged attack on a nurse at a hospital. *Id.*

¶ 10 B.C. claims, however, that the later Supreme Court decision in *Commonwealth v. D.M.*, 548 Pa. 131, 695 A.2d 770 (1997), overrules *W.P.'s* holding *sub silentio*. He argues that the *Wexler* balancing test no longer applies when the verdict is guilty by reason of insanity. We disagree. B.C.'s argument presupposes that a verdict of "not guilty by reason of insanity" is equivalent to a simple acquittal. It is not.

¶ 11 In *D.M.*, the Pennsylvania Supreme Court reiterated the *Wexler* balancing test "as a means of deciding petitions to expunge the records of all arrests which are terminated without convictions except in cases of acquittals." *Id.* at 772. The Court, reasoning that the law offers no greater absolution to an accused than acquittal of the charges, and that expungement of an arrest record, after being found not guilty, is not a matter of judicial clemency, stated: "All the factors listed in *Wexler*, and similar additional considerations, should be evaluated in expunction cases which are terminated without conviction for reasons such as nolle prosequi or ARD. *In cases of acquittal, however, we hold that a petitioner is automatically entitled to the expungement of his arrest record.*" *Id.* at 773 (emphasis added).

■ ¶ 12 Thus, what *D.M.* stands for is the proposition that *if* there is a simple acquittal after a jury or bench trial, *then* the expungement is automatic. The defendant has been vindicated, and he is automatically entitled to expungement.

¶ 13 In *D.M.* the Commonwealth did not prove beyond a reasonable doubt that the defendant committed the crime. It is clear that if there is a disposition short of verdict then *there is no automatic expungement* and the *Wexler* test applies.

¶ 14 Though addressing another issue, the Supreme Court has recognized the general distinction between a simple acquittal and a verdict of not guilty by reason of insanity:

> It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insani-

ty has no such commonly understood meaning.... It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others.

*Commonwealth v. Gass,* 514 Pa. 287, 523 A.2d 741, 744 (1987).

■ ¶ 15 A verdict of not guilty by reason of insanity means that the defendant *did* commit the act, but because of his mental illness he cannot be legally responsible. *See Jones v. United States,* 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983); *Commonwealth v. Mulgrew,* 475 Pa. 271, 380 A.2d 349 (1977). Other jurisdictions have also defined the verdict as such, and have concluded that a verdict of not guilty by reason of insanity is not the equivalent of an acquittal for expungement purposes. *See, e.g., State v. Jennings,* 130 S.W.3d 43 (Tenn.2004) (petitioner, who was found not guilty by reason of insanity of charge of stalking, was not entitled to expungement of her public records, following her release from judicial hospitalization; statute required defendant to have been found not guilty by jury to qualify for expungement); *State v. Salmon,* 279 S.C. 344, 306 S.E.2d 620 (1983) (legislature did not think a verdict of not guilty by reason of insanity necessitated destruction of police records); *State v. Ambaye,* 616 N.W.2d 256 (Minn. 2000) (resolving matter of first impression, jury verdict of not guilty by reason of insanity is not determination "in favor of" defendant under the expungement statute); *cf. People v. McCullough,* 221 Mich. App. 253, 561 N.W.2d 114 (Mich.App.1997) ("Conviction" is defined as "a judgment entered by a court upon a plea of guilty, guilty but mentally ill, or nolo contendere, or upon a jury verdict or court finding that a defendant is guilty or guilty but mentally ill." M.C.L. § 780.621a; M.S.A. § 28.1274(101a)).

¶ 16 We conclude, then, that this Court's decision in *W.P.* is easily reconcilable with our Supreme Court's decision in *D.M.* In fact, as this Court recognized in *W.P.*:

Given the insanity defense, we may not merely close our eyes to the whole thrust of the expungement process, i.e., *to exculpate an **innocent** individual from the jaws of unwarranted punishment* which manifests itself and flows from the retention of one's arrest record following, e.g., a dismissal of charges at the district justice level, a finding of not guilty, acquittal on appeal or completion of an accelerated rehabilitative disposition program[.]

*W.P.,* 612 A.2d at 441 (emphasis added). A verdict of not guilty by reason of insanity recognizes that the defendant is not innocent, but rather he or she is not legally responsible for his actions. A legal determination that one is not responsible does not equate to innocence in this context.

¶ 17 Since *D.M.* only refers to cases where there was a simple acquittal after trial, it did not overrule *W.P.* Even had the *D.M.* Court discussed not guilty by reason of insanity, that discussion would be considered *dicta.* Therefore, the most recent holding of this court, *W.P.,* remains the law, and we believe it is the appropriate result as well.

**2. The *Wexler* test does not require expungement.**

■ ¶ 18 As noted above, the violent nature of the crime is similar to the crime committed in *W.P.,* where this Court, in a case of first impression, affirmed a denial of expungement. There are differences, however.

¶ 19 In *W.P.,* the court not only noted the severity of the offense, but also pointed out that W.P. was still being monitored and treated. In this case, the trial judge noted that it did not know anything about B.C.'s mental health history or his treatment over the 17 years since the offense. B.C.'s claim that this somehow "shifts the burden of proof" is baseless, as noted by the trial judge. By showing the nature of the offense, the Commonwealth *prima facie* carried its substantial burden of proving the danger to the community. In applying the balancing test under *Wexler,* the trial court pointed out that "it had very little evidence or information favorable to B.C. to balance against the Commonwealths' evidence of its compelling interest in maintaining the criminal record." Trial Court Opinion, 1/24/07, at 5.

¶ 20 The trial judge did not abuse her discretion in applying the *Wexler* balancing test and concluding that the Commonwealth met its substantial burden to show that expungement in these circumstances was inappropriate. We therefore affirm the order denying B.C.'s motion for expungement.

¶ 21 Order affirmed.