J-S73030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LORI DENISE HEFFNER | |
| Appellant | No. 958 MDA 2014 |

Appeal from the Order Entered May 8, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0001723-2011

BEFORE:  BOWES, J., WECHT, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:  **FILED APRIL 07, 2015**

Lori Denise Heffner appeals from the May 8, 2014 order denying her petition to expunge.  We affirm.

Due to events that occurred on March 23, 2011, Appellant was charged with two counts of felony retail theft, and one count each of receiving stolen property, false identification to law enforcement, and unsworn falsification to authorities.  These charges were based upon the following allegations contained in the affidavit of probable cause attached to the criminal complaint.

Loss prevention officer Jerome Mohler of Redner's Warehouse Market ("Redner's"), which was located on 1149 Berkshire Boulevard, Wyomissing, called police to the store.  Wyomissing Police Officer Scott Schaeffer

responded, and Mr. Mohler reported the following. He had observed Appellant enter the store, place a box of Glad trash bags and two bottles of Burt's Bee wash in her purse, and enter the public restroom. After spending twenty minutes there, Appellant exited the bathroom, walked past the cash registers, and exited the store without paying for the merchandise in her purse. Mr. Mohler and another employee apprehended Appellant and took her to the office, where they discovered the three stolen items in her handbag with the UPC stickers removed.

When Officer Schaeffer arrived at the market, Appellant refused to provide her name and address but did offer a description of the vehicle that she drove to Redner's. Officer Schaeffer found the vehicle in the store parking lot and discovered that it was owned by Michael Heffner. Using Mr. Heffner's address, Officer Schaeffer learned that a woman named Lori D. Heffner resided with him. The driver's license photograph of Lori D. Heffner matched Appellant, who denied that she was Lori D. Heffner and stated that her name was Lori Maxton. Appellant also gave a birthdate different from that listed for Lori D. Heffner. Appellant had a criminal record for "two prior convictions (1999 and 2005) for retail theft in Berks County." Affidavit of Probable Cause, 4/27/11, at 1.

After the present criminal charges were filed, there were various status conferences. Trial was scheduled on two separate occasions but the scheduling orders were vacated. A bench warrant was issued for Appellant's

arrest on January 24, 2013, after she failed to appear at a January 22, 2013 status hearing. The warrant was lifted, and on February 7, 2013, Appellant, not the Commonwealth, applied for a competency hearing. Although the motion for declaration of competency indicated that Appellant expected to regain competency in the near future, the court's finding after a hearing on that motion was to the contrary.

Specifically, the trial court concluded both that Appellant was incompetent and that her condition would not improve in the foreseeable future. The hearing and exhibits introduced at that proceeding are not contained in the record since the trial court sealed the record of the hearing as well as reports from a doctor. Hence, we are not able to ascertain the reasons for the trial court's ruling. Based upon the trial court's ruling, the inference is that the reports submitted by Appellant indicated that her mental competency would not be regained in the foreseeable future. The court dismissed the charges under 50 Pa.C.S. § 7403(d),[1] which provides, in

---

[1] That statute states in its entirety:

> Whenever a person who has been charged with a crime has been determined to be incompetent to proceed, he shall not for that reason alone be denied pretrial release. Nor shall he in any event be detained on the criminal charge longer than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If the court determines there is no such probability, it shall discharge the person. Otherwise, he may continue to be criminally detained so long as such probability

pertinent part, that if a person charged criminally is adjudicated incompetent and if the court ascertains that there is no "substantial probability that [the defendant] will attain [his mental] capacity in the foreseeable future," then the court "shall discharge the person."

Appellant filed her expungement motion on February 25, 2014, only one year after she asked to be declared incompetent and obtained dismissal of the aforementioned criminal charges based upon a finding that there was no substantial probability that she would regain her capacity in the foreseeable future. In her petition, Appellant did not outline any employment history nor did she state whether, and to what extent, treatment had improved her mental health. The petition contains a bare allegation that retention of the record herein would "adversely affect future employment prospects and will prejudice [Appellant's] standing in the community." Petition to Expunge Criminal Record, 2/25/14, at 1. Appellant did not outline that she had applied for and been rejected for any specific job due to the record in this matter, and failed to provide proof of her criminal history.

The Commonwealth objected to the grant of the petition to expunge and noted that Appellant failed to attach a current copy of her criminal

exists but in no event longer than the period of time specified in subsection (f).

50 P.S. § 7403(d).

record, as required by the rules of criminal procedure. It further outlined that its proof against Appellant had been exceptionally strong and that Appellant's claimed harm was illusory due to the fact that she already had convictions for retail theft and fleeing and eluding police.

The trial court issued an order requiring Appellant to file a copy of her criminal record. Appellant complied with that directive. She pled guilty to retail theft on June 9, 1999, and on March 30, 2002, she pled guilty to fleeing or attempting to elude a police officer, recklessly endangering another person, and driving while her license was suspended or revoked.

The trial court denied the expungement motion, and this appeal followed. Appellant raises the following contentions: "1. Did the trial court err in failing to hold a hearing on defendant's Petition for Expungement?" and "2. Did the trial court err in denying the Expungement Petition?" Appellant's brief at (unnumbered page) 4.

Appellant first contests the fact that she did not receive a hearing and notes that Pennsylvania law mandates that one be held on a petition to expunge. Herein, the trial court scheduled a hearing for April 15, 2014, and Appellant's counsel opened by stating that he was not served with notice of the hearing date. The trial court ascertained that Appellant rather than her counsel received the notice in question. When asked what he wanted to do, counsel did not ask that the hearing be rescheduled nor did he indicate that he had evidence that he wanted to present. Instead, counsel responded

that he wanted the Commonwealth to review his brief. The court then asked if there were any expungement cases dealing specifically with dismissal of charges based upon a finding of incompetency, and counsel responded that he could not find any case law in that respect. The proceedings adjourned.

We conclude that, under the circumstances, Appellant waived her right to a hearing. A hearing was duly scheduled on Appellant's expungement request. At the designated time and place, Appellant's counsel appeared. When asked specifically what he wanted to do about the fact that Appellant, rather than her counsel, received notice of the hearing, counsel did not ask for a continuance nor did he suggest that there was evidence to present in support of the expungement petition beyond that already outlined therein. Likewise, on appeal, Appellant does not delineate any proof she would present at a hearing if we remanded for one. Appellant's failure to request another hearing on April 15, 2014, is fatal to her ability to contest the failure to conduct a hearing now on appeal. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Appellant next avers that the trial court erred in denying the expungement petition. Our Supreme Court recently reinforced the principles applicable to a defendant's request for expungement in ***Commonwealth v. Wallace***, 97 A.3d 310 (Pa. 2014). First, the Court reinforced that, "The decision to grant or deny a petition for expungement lies in the sound

discretion of the trial court, which must balance 'the individual's right to be free from harm attendant to maintenance of the arrest record against the Commonwealth's interest in preserving such records.'" *Id*. at 317 (quoting *Commonwealth v. Wexler*, 431 A.2d 877 (Pa. 1981)).

Additionally, the right to expungement, which can be a component of due process, differs according to the disposition of the charges in question.

> When an individual has been convicted of the offenses charged, then expungement of criminal history records may be granted, only under very limited circumstances that are set forth by statute. When a petitioner has been tried and acquitted of the offenses charged, we have held that the petitioner is automatically entitled to the expungement of his arrest record. When a prosecution has been terminated without conviction or acquittal, for reasons such as *nolle prosse* of the charges or the defendant's successful completion of an accelerated rehabilitative disposition program ("ARD"), then this Court has required the trial court to balance the individual's right to be free from the harm attendant to the maintenance of the arrest record against the Commonwealth's interest in preserving such records.

*Wallace*, *supra* at 317-18 (quoting *Commonwealth v. Moto,* 23 A.3d 989, 993 (2011)). Five factors are weighed where neither an acquittal nor a conviction is at issue in the matter:

> (1) The strength of the Commonwealth's case against the petitioner; (2) the reasons the Commonwealth gives for wishing to retain the records; (3) the petitioner's age, criminal record, and employment history; (4) the length of time that has elapsed between the arrest and the petition to expunge; (5) and the specific adverse consequences the petitioner may endure should expunction be denied.

*Wallace*, *supra* at 318 (quoting *Wexler, supra* at 879). This list is not exhaustive and the facts of each particular case must be carefully weighed. *Moto*, *supra*.

The burden of proof in the expungement setting is dependent upon the nature of the Commonwealth's proof as to the crimes. If the Commonwealth cannot carry its burden of proof or admitted prior to trial that it could not establish the crimes beyond a reasonable doubt, then the Commonwealth bears the burden of justifying why the arrest record should not be expunged. *Moto*, *supra*; *Wexler*, *supra*.

The importance of our deferential standard of review cannot be overstated. In *Wallace*, *supra*, the defendant, who was incarcerated, had a significant criminal history spanning many years. The defendant sought the removal of records of multiple charges that did not result in conviction. The defendant's request for expungement was denied without a hearing. The trial court concluded that the Commonwealth's interest in retaining the records outweighed the adverse consequences to the defendant if expungement was granted. The Commonwealth reported that it sought to retain all the records as a relevant consideration should the then-incarcerated defendant be paroled and thereafter violate that parole. Defendant claimed the retention of his arrest records would stigmatize him.

The trial court rejected defendant's position based on the existence of a record of many charges that resulted in convictions. It did not consider

any other factor in its decision denying expungement. This Court reversed and concluded that the defendant was entitled to a hearing and separate consideration as to whether each charge not leading to conviction should be expunged. We opined that some of the charges might be eligible for expungement. Our Supreme Court disagreed and reinstated the trial court order, which rested, as noted, on the defendant's inability to prove harm from retention of the arrest records since he already had criminal convictions.

In another recent decision, **Commonwealth v. Moto**, 23 A.2d 989 (Pa. 2011), the Supreme Court also reversed one of our decisions granting expungement in face of the trial court's denial of that relief. Therein, in 1987, the defendant was convicted of rape, involuntary deviate sexual intercourse, robbery, and conspiracy after the victim of those crimes unequivocally and positively identified him as one of two men who attacked her. The victim also testified that, during the defendant's trial, the other perpetrator stopped her and threatened to kill her and her children if she testified against the defendant.

After he was convicted, the defendant obtained a new trial in 1995 based upon DNA evidence from the victim's underwear, which contained sperm from three men who were not the defendant. The Commonwealth was not able to proceed to a second trial since it could not locate the victim, who fled the area due to continued threats. The Commonwealth withdrew

the charges in 1996. The defendant then asked for expungement in 2007. During the proceedings, the Commonwealth produced witnesses establishing that the evidence that resulted in the grant of a new trial did not necessarily exonerate the defendant. Specifically, DNA of sperm can remain on clothing for years, even after the clothing is laundered, and the defendant may not have ejaculated during the event. The Commonwealth reported that its decision not to retry the defendant was due solely to its inability to locate the victim. The Commonwealth sought to retain the criminal record since Appellant had been convicted and based upon the inclusive nature of the DNA proof.

In declining to award expungement, the trial court relied upon the strength of the Commonwealth's case, that fact that the defendant was convicted before being granted a new trial, and the public's interest in retaining the arrest record of a person who was convicted of serious crimes. We reversed the trial court based upon a conclusion that the Commonwealth had not met its burden of proof and that expungement was denied based upon consideration of only one factor, which was the strength of the Commonwealth's case during trial.

Our Supreme Court, in turn, reversed this Court. As it had in **Wallace**, our High Court admonished us that the decision as to the grant or denial of an expungement request "rests with the sound discretion of the trial court, and we review that court's decision for abuse of discretion."

*Moto*, *supra* at 993.  The *Moto* Court rejected our conclusion that the trial court did not consider all of the *Wexler* factors.  It noted that the trial court indicated that it had performed the *Wexler* analysis and ruled that we were required to defer to that representation, even though the trial court did not specifically address each factor outlined in *Wexler*.  Our Supreme Court continued that the trial court was permitted to deny expungement by placing great weight on one factor, which, in that case, was the strength of the Commonwealth's case against the defendant.  The *Moto* Court also observed that the defendant had a history of arrests.  Since the trial court applied the proper standard to the facts of the case, it did not abuse its decision, and this Court erred in reversing it.  *Moto*, *supra*.

In this case, it is clear that the trial court did not abuse its discretion in concluding that expungement was not warranted. Indeed, this case is legally indistinguishable from *Moto* since Appellant had a history of criminal convictions similar to those at issue in this case and since the Commonwealth had compelling evidence that Appellant committed the crimes in question.

The trial court in this matter did initially indicate that it did not believe that the *Wexler* factors were implicated in this case.  However, it continued that "[e]ven if *Wexler* is applicable, expungement would still not be appropriate."  Trial Court Opinion, 7/7/14, at 8.  The court outlined that, based upon its review of the file, "it appeared that the Commonwealth had a

strong case against the Petitioner." *Id*. The court also considered the fact that Appellant already had a record and opined that the "existing criminal record" demonstrated that "retention of the records at issue is not an onerous adverse consequence for the Petitioner." *Id*. at 9.

The court additionally found a public interest in retaining the record. Specifically, "In any dealings law enforcement and prospective employers might have with the Petitioner, they need to be aware of the Petitioner's potential for dishonesty, whether the intentional products of cognitive thought or the by-product of mental infirmity, as well as her potential for lack of comprehension of her actions and their consequences." *Id*. at 9. The court further noted that Appellant made no attempt to cite "even one specific instance of a prospective employer denying her employment because of the currently contested public record." *Id*.

When a defendant is absolved from criminal responsibility due to his mental state, the disposition of the charges is not viewed as an acquittal. *Commonwealth v. B.C.*, 936 A.2d 1070 (Pa.Super. 2007) (defendant found not guilty by reasons of insanity). Rather, the verdict is a finding that the defendant committed the act but cannot be held legally accountable due to his mental condition. *Id*. In *B.C.*, we upheld a trial court's refusal to expunge the record, even though the defendant specifically outlined that he had been unable to secure a job due to his arrest record. We considered the fact that the defendant was not found innocent of committing the acts in

question as well as the lack of evidence that the defendant's mental condition had improved. *See also Commonwealth v. V.G.*, 9 A.3d 222 (Pa.Super. 2010) (affirming denial of expungement of defendant who pled *nolo contendere* but mentally ill).

Appellant herein obtained dismissal of these charges based on her inability to communicate with her lawyer in defending this case rather than based upon innocence. Indeed, the Commonwealth's case was strong. There was an eyewitness to Appellant's theft of three items from a retail establishment. Appellant gave a false name and date of birth to a police officer.

Since the Commonwealth did establish that it could have obtained a conviction herein founded upon the evidence, it satisfied its burden of proof and did not need to articulate any justification for its retention of the records. In this respect, we note that Appellant asserts herein that the Commonwealth had a "heavy burden of producing compelling evidence that the arrest records should be retained." Appellant's brief at (unnumbered page) 8. In this respect, Appellant relies upon *Commonwealth v. Hanna*, 964 A.2d 923 (Pa.Super. 2009). However, *Hanna* was merely articulating the rule of law announced in *Wexler*. The full *Hanna* quote is as follows:

> In *Wexler,* [*supra*,] the Commonwealth *nolle prossed* charges against a defendant **based on the prosecutor's assessment that it could not prove the charges beyond a reasonable doubt**. The Court held that **under those circumstances**, the defendant was entitled to an expungement

hearing where the Commonwealth bore a heavy burden of producing compelling evidence that the arrest records should be retained, using a multi-factor test.

*Hanna*, *supra* at 925-26 (emphasis added).

Thus, Appellant's recitation of the Commonwealth's burden of proof in this case is incorrect.  The prosecutor never made an assessment that these charges could not be proven, and they were decidedly not *nolle prossed*.  To the contrary, the Commonwealth satisfied its burden of proving that it could have obtained a conviction.  Thus, Appellant errs in suggesting that the Commonwealth had to justify its decision to oppose expungement.  In addition, the trial court articulated a valid public interest in maintenance of these records.  The public should be aware of Appellant's history of an inability to control herself to avoid dishonest activity.

Moreover, Appellant's asserted interest in expungement is that this criminal record will adversely affect her ability to gain employment and her community standing.  As noted by the Commonwealth, this concern is illusory given her prior convictions of retail theft and fleeing or eluding police, which are similar or identical to the charges at issue in this case. *Wallace*, *supra*.

Appellant, who was in her mid-50s, never proffered a single instance where she applied for and was denied employment based upon this arrest record and did not outline any past employment history.  Only two years elapsed between the crimes and the expungement request.  Finally,

Appellant produced no evidence that she had improved her mental condition so that she would no longer commit these types of criminal actions due to her inability to comprehend that they were wrong. This omission is a critical consideration in this matter under **B.C.**, **supra**.

There is not a single factor outlined in **Wexler** that militates in favor of expungement in this case, and the trial court did not abuse its discretion. In her argument maintaining that expungement is mandated, Appellant would have us ignore the **Wexler** factors and singularly focus on the fact that the record herein contains a finding that she was incompetent. Appellant maintains:

> The public web docket sheets available at the Unified Judicial System's website . . . state that defendant was "declared incompetent" and that she was incompetent to stand trial. It is also noted that a hearing was held under the mental health procedures act. See attached appendix C with highlighted portions.

> The public docket sheets repeatedly note that Appellant was declared incompetent, incompetent to stand trial. These docket sheets are available for any member of the public to read with a simple search of Appellant's name. This is certainly prejudicial to appellant's standing in the community.

> . . . .

> The first reason for expungement is the very public and open records that (available to anyone with internet access) that defendant was "declared incompetent" and was subject to hearings under the mental health act. Pennsylvania has a strong privacy and confidentiality interest concerning the treatment of the mentally ill. See 50 P.S. [§] 7111 and 42 [Pa.C.S.A. §] 5944.

Appellant's brief at (unnumbered pages) 7-8, 9. *See also id*. at 9 ("Clearly the *Wexler* factors are not absolute[;] the Court must consider the harm of having defendant's mental health matters available to the general public."); *Id*. ("Appellant submits it is almost impossible to get a job with public records stating she was 'declared incompetent.' Having any member of the public able to read official court records describing you as incompetent is embarrassing and hurtful."); *Id* at 10 ("The adverse consequences are clear[;] defendant's mental health issues have been made part of the public record and this will continue to stigmatize defendant if this expungement is not granted."); *Id*. ("Having a criminal record is one thing. Having a permanent public record of mental illness and being 'declared incompetent' is another.")

Simply put, we cannot override the trial court's discretion, ignore all the *Wexler* factors, and grant expungement based solely upon an alleged social stigma attached to Appellant's incompetency finding. Under *Wallace* and *Moto*, we are prohibited from re-weighing the factors utilized in an expungement decision. Of great significance is the following. It was Appellant herself who sought the incompetency determination. It was **only** as a result of this ruling that Appellant obtained dismissal of these charges in the first instance. Thus, it was Appellant's decision to place an incompetency determination on the record in this matter. Absent Appellant's

own request to be declared incompetent, she faced overwhelming evidence of guilt and a conviction.

Our decision to reject this particular argument also is premised upon the fact that Appellant failed to proffer that her mental condition has improved to any extent so that she is unlikely to commit these types of crimes in the future.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/7/2015