J-S14018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NICOLE BECK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH BECK | : | |
| | : | |
| Appellant | : | No. 1206 WDA 2022 |

Appeal from the Order Entered September 12, 2022
In the Court of Common Pleas of Blair County Civil Division at No(s):
2021 GN 1776

BEFORE:   PANELLA, P.J., BENDER, P.J.E., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED: JUNE 6, 2023**

Appellant, Joseph Beck, appeals from the trial court's September 12, 2022 order denying his petition to expunge the record of a final protection from abuse order entered against him under the Protection from Abuse Act (PFA), 23 Pa.C.S. §§ 6101-6122.  After careful review, we reverse the court's order and remand with instructions.

The trial court summarized the pertinent history of this case, as follows:

> [Appellant] was a defendant in a [PFA] … action that resulted in a final PFA order entered against [him].  The final order was entered into, by agreement of the parties, on April 12, 2022[,] and expired on July 2, 2022.  [Appellant] filed an Expungement Petition on August 18, 2022.  In his Petition, [Appellant] was seeking expungement of the record of his final PFA order.  This [c]ourt heard [Appellant's] argument on September 12, 2022. [O]n that same day, this [c]ourt issued an opinion denying [Appellant's] Expungement Petition.

---

[*] Retired Senior Judge assigned to the Superior Court.

Trial Court Opinion (TCO), 10/26/22, at 1.

Appellant filed a timely notice of appeal. The court did not direct him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, but it filed a Rule 1925(a) opinion on October 26, 2022. Herein, Appellant states two issues for our review:

1. Did the trial court err in denying Appellant's Expungement Petition by claiming Pennsylvania law precludes expungement of PFA cases that have a consent agreement approved as an order of court?

2. Alternatively, did the trial court err by not allowing a **Wexler**[1] analysis to take place?

Appellant's Brief at 4.

Initially, we observe that Appellant does not present any argument on his second issue. Instead, in the Argument section of his brief, he states his second issue as follows: "The agreement entered by the parties was not a 'Final Order.'" **Id.** at 16. Because Appellant presents no developed argument on his "**Wexler** analysis" issue, it is waived. **See Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are

---

[1] **Commonwealth v. Wexler**, 431 A.2d 877, 879 (Pa. 1981) (setting forth a non-exhaustive list of factors for the court's consideration on review of an adult expungement petition as follows: (1) the strength of the Commonwealth's case against the petitioner; (2) the reasons the Commonwealth gives for wishing to retain the records; (3) the petitioner's age, criminal record, and employment history; (4) the length of time that has elapsed between the arrest and the petition to expunge; and (5) the adverse consequences the petitioner may endure should expungement be denied).

sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … [W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

Moreover, Appellant did not present, in his 'Statement of the Questions Involved,' his claim that the agreement entered by the parties was not a final order. This Court has held that such a failure results in waiver of appellate issues. **See Interest of: J.R.R.**, 229 A.3d 8 (Pa. Super. 2020) (holding that any issue not set forth in or suggested by an appellant's Statement of the Questions Involved is deemed waived). Thus, we will not consider the arguments set forth in support of the second issue in Appellant's brief. However, to the extent Appellant's first issue involves a more cursory argument that the PFA order was not a 'final order' as contemplated by the statute, we will assess that claim.

In reviewing Appellant's issues, we apply the following standard:

The decision to grant or deny a request for expungement of an arrest record lies in the sound discretion of the trial judge, who must balance the competing interests of the petitioner and the Commonwealth. We review the decision of the trial court for an abuse of discretion.

**Commonwealth v. Rodland**, 871 A.2d 216, 218 (Pa. Super. 2005) (citing **Commonwealth v. Lutz**, 788 A.2d 993, 996 (Pa. Super. 2001)).

In ***Graham v. Flippen***, 179 A.3d 85 (Pa. Super. 2018), we summarized the law regarding expungement of PFA records, as follows:

[I]n ***Carlacci*** [***v. Mazaleski***, 798 A.2d 186 (Pa. 2002)], a temporary PFA order was issued against Carlacci; however, that order was ultimately ordered null and void, as per a stipulation entered by the parties. [***Id.***] at 187. In ruling that Carlacci was entitled to expungement of that record, our Supreme Court focused on the fact that the PFA petition was "discontinued before a hearing at which the plaintiff … would have had to meet the burden of proving by a preponderance of the evidence that the allegation of abuse contained in the PFA[] petition[] had occurred." [***Id.***] at 190–91. In other words, the trial court had never issued a permanent order or made any findings of fact that the allegations of abuse had actually happened; rather, the record contained only "bald allegations of prior alleged acts of abuse that were contained in [the plaintiff's] petition, nothing more." ***Id.*** at 191 (citation omitted).

After ***Carlacci***, this Court decided [***Commonwealth v.***] ***Charnik***[, 921 A.2d 1214 (Pa. Super. 2007)]. There, a final PFA order was entered against Charnik following a hearing. However, the plaintiff ultimately sought, and was granted, leave to withdraw that final PFA order. Thereafter, Charnik petitioned for expungement of the PFA record. In affirming the trial court's denial of Charnik's petition, we initially reiterated ***Carlacci's*** holding that "when a PFA[] petition filed against a PFA[] defendant has been dismissed by court order, … or the PFA[] proceedings never evolve beyond the temporary order stage, … expungement is proper ***as a matter of law***." ***Charnik***, 921 A.2d at 1219–20 (emphasis added; relying on ***Carlacci***, ***supra***, and ***P.E.S. v. K.L.***, 720 A.2d 487 (Pa. Super. 1998)). However, we also declared that there exists an "expungement continuum" that "ranges from (a) illegal or void civil commitments, acquittals in criminal cases, and PFA matters that have not been proven and brought to final order (such as … ***Carlacci***), where expungement is proper ***as a matter of law***, to (b) non-conviction or arrest records, as in *nol pros* or ARD, where expungement is ***a matter of judicial decision***…, and to (c) conviction records, where there is no right of expungement except ***by statutory authorization*** in limited circumstances." ***Id.*** at 1220 (emphasis in original). We then held that Charnik's PFA record was "closer to a conviction rather than a non-conviction record[,]" as "a final order was entered … only

- 4 -

after facts were brought forth proving the allegations of abuse by a fair preponderance of the evidence…." ***Id.*** Thus, we held that expungement was not warranted, presumably because there is no statutory authorization for the expungement of a PFA record, ***id.*** at 1218, and Charnik also did not meet the strict requirements for expungement of the records of a convicted person, ***id.*** at 1217.

> Applying ***Carlacci*** and ***Charnik*** to [***Graham***], [this Court determined] that three of [Graham's] PFA cases [fell] under prong (a) on the 'expungement continuum,' and warrant[ed] expungement as a matter of law. In those three cases, only temporary PFA orders were entered against [Graham], and each of those orders were ultimately dismissed before a hearing was held, at which [Graham's accuser] would have had to prove her allegations of abuse by a preponderance of the evidence. Therefore, the [three] records [at issue] contain[ed] only bald, unproven allegations of abuse, to which [Graham was] entitled to expungement as a matter of law.

***Graham***, 179 A.3d at 87–88.

In the instant case, Appellant claims that the trial court erred by interpreting our Supreme Court's decision in ***Carlacci*** as precluding the expungement of any PFA record where a final order was entered. Namely, the trial court opined:

> [T]he Supreme Court in ***Carlacci*** distinguished temporary PFA orders from final PFA orders. The Court held that temporary PFA orders could be expunged. ***Carlacci***, 798 A.2d at 191. The Supreme Court in ***Carlacci***[] focused on the fact that the PFA order it was reviewing was discontinued before a hearing was held. ***Id.*** at 190. The [C]ourt there cited to Judge Emeritus Cercone's dissenting memorandum that stated, "[T]he PFA[] proceedings never legally evolved beyond the temporary order stage…[. T]he Trial Court did not issue a permanent order[.]" ***Id.*** at 191. The [C]ourt in ***Carlacci*** then compared a temporary PFA order to an acquittal of a criminal offense, stating, "[I]t is equally improper to [assess] the strength of a PFA[] petition that has since been dismissed by court order before the plaintiff even attempted to meet its burden of proving the allegation of abuse contained in the PFA[] petition[.]" ***Id.***….

> Because the Supreme Court focused on the temporary nature of the PFA order, this [c]ourt interpreted the **Carlacci** case to mean that [a] temporary PFA order could be expunged, but final PFA orders could not be expunged. In the instant case, a final PFA order was entered on April 12, 2022. Because the PFA order entered in the instant case was a final order, this [c]ourt denied [Appellant's] Expungement Petition.

TCO at 2-3.

Appellant contends that, contrary to the trial court's interpretation of **Carlacci**, it does not stand for the conclusion that expungement is **precluded** where a PFA case has gone past the point of a temporary PFA order being entered. **See** Appellant's Brief at 12. Instead, he claims that "[t]he **Carlacci** case merely **allowed** for expungement of PFA actions where the case had **not** proceeded past the entry of a Temporary PFA Order…." **Id.** (emphasis added). According to Appellant, the case law discussed above regarding the "expungement continuum" requires **both** the entry of a final order **and** the allegations of abuse to have been proven. He insists that here, not only was the agreement by the parties not a 'final order' as contemplated by the PFA statute but, even if it was, "[t]here was no evidentiary hearing, no evidence presented, no admissions[,] and no abuse … proven…." **Id.** at 15. Therefore, he insists that "expungement is … proper as a matter of law." **Id.**

Initially, we disagree with Appellant that the PFA order was not intended to be a final order but, instead, a consent agreement. Notably, the PFA order is titled, "Final Order." **See** Final PFA Order, 4/12/22, at 1. While the order states that it "is entered by agreement without an admission[,]" it immediately thereafter directs that, "[w]ithout regard as to how the order was entered,

- 6 -

*this is a final order of court subject to full enforcement pursuant to the Protection from Abuse Act*." *Id.* at 2 (emphasis added). Therefore, we agree with the trial court that the order was meant to constitute a final PFA order.

However, after careful review, we agree with Appellant that expungement of his PFA record was warranted in this case, albeit for a different reason than he provides. Again, Appellant contends that he is entitled to expungement as a matter of law because there was no finding of abuse or admission of wrongdoing on his part. We need not decide whether Appellant is correct that there must be *both* an explicit finding or admission of abuse, as well as a final PFA order entered, before expungement is not warranted as a matter of law. This is because here, the court failed to conduct *any* hearing before issuing the final PFA order. "Pursuant to the PFA[ Act], once a petition is filed[,] a hearing *shall* be held within 10 days." *P.E.S.*, 720 A.3d at 489 (emphasis added; citing *Heard v. Heard*, 614 A.2d 255 (Pa. Super. 1992)). "If a hearing is not held, *a trial court lacks jurisdiction to grant relief to the filing party*." *Id.* (emphasis added; citing *Heard*, 614 A.2d at 640).

In this case, no hearing was conducted, yet the court entered a final PFA order stating, "Plaintiff's request for a final protection order is granted." Final PFA Order at 2. Because no hearing was held, the court did not have

jurisdiction to enter that final PFA order granting the plaintiff relief.[2]  In other words, that order was a legal nullity.  Consequently, the PFA proceedings in this case did not validly progress past the point of the temporary PFA order. Accordingly, applying **Carlacci**, **Charnik**, and **Graham**, we conclude that Appellant's PFA case falls under prong (a) on the 'expungement continuum,' and warrants expungement as a matter of law.

Thus, we reverse the trial court's order denying Appellant's petition for expungement, and remand this case for the trial court to enter an order expunging the docket related to the PFA proceedings in this case.

Order reversed.  Case remanded with instructions.  Jurisdiction relinquished.

---

[2] We recognize that the PFA Act allows for the parties to enter a consent agreement, which the court can then approve and continue the PFA proceedings during the pendency of that agreement.  **See** 23 Pa.C.S. § 6108(a) ("The court may grant any protection order **or approve any consent agreement** to bring about a cessation of abuse of the plaintiff or minor children.") (emphasis added); **see also Fischl v. Fischl**, 260 A.3d 128 (Pa. Super. 2021) (unpublished memorandum) (explaining that, after Father filed for a temporary PFA order against Son, the parties entered into a consent agreement, which stated that a final PFA order would be entered if Son violated any of the terms of the consent agreement, and that the PFA action was continued for a period not to exceed three years).  Thus, while we reject Appellant's argument that the final order issued in this case should be construed as a consent agreement, we recognize that the parties **could have** entered a consent agreement, which the court could have then approved and continued the PFA action during the pendency thereof.  **See** 23 Pa.C.S. § 6107(c) ("Continued hearings").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2023