J-A24007-23

2024 PA Super 115

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JACOB ADAMS | : | |
| | : | |
| Appellant | : | No. 2229 EDA 2022 |

Appeal from the Order Entered July 25, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at Nos:  MC-51-CR-0039001-2008,
MC-51-CR-0039002-2008, MC-51-CR-0039003-2008,
MC-51-CR-0039004-2008, MC-51-CR-0039005-2008

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JACOB ADAMS | : | |
| | : | |
| Appellant | : | No. 2230 EDA 2022 |

Appeal from the Order Entered July 25, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at Nos:  MC-51-CR-0039001-2008,
MC-51-CR-0039002-2008, MC-51-CR-0039003-2008,
MC-51-CR-0039004-2008, MC-51-CR-0039005-2008

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JACOB ADAMS | : | |
| | : | |
| Appellant | : | No. 2231 EDA 2022 |

Appeal from the Order Entered July 25, 2022
In the Court of Common Pleas of Philadelphia County

Criminal Division at Nos:  MC-51-CR-0039001-2008,
MC-51-CR-0039002-2008, MC-51-CR-0039003-2008,
MC-51-CR-0039004-2008, MC-51-CR-0039005-2008

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JACOB ADAMS | : | |
| | : | |
| Appellant | : | No. 2232 EDA 2022 |

Appeal from the Order Entered July 25, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at Nos:  MC-51-CR-0039001-2008,
MC-51-CR-0039002-2008, MC-51-CR-0039003-2008,
MC-51-CR-0039004-2008, MC-51-CR-0039005-2008

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JACOB ADAMS | : | |
| | : | |
| Appellant | : | No. 2233 EDA 2022 |

Appeal from the Order Entered July 25, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at Nos:  MC-51-CR-0039001-2008,
MC-51-CR-0039002-2008, MC-51-CR-0039003-2008,
MC-51-CR-0039004-2008, MC-51-CR-0039005-2008

BEFORE:  STABILE, J., DUBOW, J., and SULLIVAN, J.

OPINION BY STABILE, J.:                                    **FILED JUNE 3, 2024**

Appellant, Jacob Adams, was sentenced in 2007 to probation for violating a Protection From Abuse ("PFA") order against his estranged wife. In mid-2008, he was arrested five times based on allegations that he

- 2 -

continued to contact or threaten his wife. One month later, the Commonwealth withdrew all charges when Appellant's wife failed to appear in court to testify. Thirteen years later, in 2021, Appellant filed petitions to expunge all records in the 2008 cases.[1] Relying on hearsay allegations in the records, the court denied his petition. Applying the balancing test articulated in **Commonwealth v. Wexler**, 431 A.2d 877 (Pa. 1981), we hold that the court abused its discretion by denying expungement. Accordingly, we reverse.

On August 10, 2007, Appellant was arrested and charged with violating a PFA order (a third-degree misdemeanor) and harassment (a summary offense) for conduct relating to his wife. Appellant pled *nolo contendere* to those charges and was sentenced to six months' probation.

In June and July of 2008, Appellant's wife called the police on five separate occasions, alleging each time that Appellant had spoken with her in violation of the PFA order. The police filed five sets of criminal charges, and on August 4, 2008, Appellant was charged in all five cases for violating the PFA order and in three of these cases for harassment and terroristic threats. In each case, the criminal complaint alleged that Appellant either started an argument with his former wife or made a threat of violence against her. In one case, Appellant allegedly told his wife that he was "going to stomp her when he sees her." N.T., Expungement Hearing 7/25/22, at 8. In another case, Appellant allegedly told his wife that he was "going to kill her." **Id.**

_____

[1] Because the petitions are essentially identical, we will refer to them collectively as the "petition."

The docket reflects that there was no preliminary hearing in any of the five cases. The court initially scheduled trial in all five cases for September 25, 2008, but trial was continued to November 4, 2008 for reasons not provided in the records. On November 4, 2008, the Commonwealth withdrew all charges due to Appellant's wife's failure to appear in court to testify.

Appellant asserts, and the Commonwealth does not dispute, that he has had no other contact with the criminal justice system other than the contacts in 2007 and 2008.

On February 22, 2022, over thirteen years after withdrawal of the 2008 charges, Appellant filed a petition to expunge all records in the 2008 cases. Appellant did not seek to expunge the record in the 2007 case in which he was sentenced to probation.

On July 25, 2022, the court convened an evidentiary hearing on Appellant's petition. At the time of this hearing, Appellant was eight days away from his 66th birthday, N.T., 7/25/22, at 8, and was arrest-free since his arrest in 2008. Appellant testified on his own behalf during the hearing. He testified that his wife's allegations were untrue and that he subsequently developed a cordial relationship with her. *Id.* at 12-13. The Commonwealth called no witnesses. The only evidence offered by the Commonwealth were the PARS reports[2] generated in each case and a copy of Appellant's secure

_____

[2] PARS, a "Preliminary Arrest Report Summary," is a document created by the Philadelphia Police Department immediately after an arrest that provides a detective's summary of the allegations in a case.

- 4 -

court summary. The Commonwealth objected to expungement on the ground that the charges involved allegations of domestic violence and because the record showed "a course of conduct with respect to the same complainant." *Id.* at 7.

At the conclusion of the hearing, the court denied Appellant's petition. Appellant filed a timely appeal to this Court, and both Appellant and the court complied with Pa.R.A.P. 1925. Appellant raises a single issue in this appeal: "Did the lower court err and abuse its discretion in denying [Appellant's] motion to expunge his arrest record where the charges were withdrawn before trial and where the Commonwealth failed to present compelling evidence that expungement was inappropriate?" Appellant's Brief at 3. We review the denial of Appellant's expungement petition for abuse of discretion. *Commonwealth v. Hanna*, 964 A.2d 923, 925 (Pa. Super. 2009).

Our Supreme Court has explained that "[j]udicial analysis and evaluation of a petition to expunge depend upon the manner of disposition of the charges against the petitioner." *Commonwealth v. Moto*, 23 A.3d 989, 993 (Pa. 2011). "When an individual has been convicted of the offenses charged, then expungement of criminal history records may be granted only under very limited circumstances that are set forth by statute." *Id.* (citing 18 Pa.C.S.A. § 9122; *Hunt v. Pennsylvania State Police*, 983 A.2d 627, 633 (Pa. 2009)). When the defendant has been tried and acquitted of the offenses charged, he is "automatically entitled to the expungement of his arrest record." *Id.* (citing *Commonwealth v. D.M.,* 695 A.2d 770, 772–73 (Pa.

1997)). Finally, when the Commonwealth withdraws the charges against the defendant prior to trial, the situation in the present case, the court must apply the standards articulated in *Commonwealth v. Wexler*, 431 A.2d 877, 879 (Pa. 1981), to the expungement petition. *Id.*

> The *Moto* court cogently summarized *Wexler* as follows:
>
> When a prosecution has been terminated without conviction or acquittal, for reasons such as *nolle prosse* of the charges or the defendant's successful completion of an accelerated rehabilitative disposition program ("ARD"), then this Court has required the trial court to "balance the individual's right to be free from the harm attendant to maintenance of the arrest record against the Commonwealth's interest in preserving such records." [*Wexler*,] 431 A.2d [at] 879; *D.M., supra* at 772 ("We reiterate the authority of *Wexler* and the balancing test approved therein as the means of deciding petitions to expunge the records of all arrests which are terminated without convictions except in cases of acquittals.").
>
> To aid courts in applying the balancing test for expungement, we also adopted in *Wexler* the following non-exhaustive list of factors that the court should consider:
>
>> These factors include [1] the strength of the Commonwealth's case against the petitioner, [2] the reasons the Commonwealth gives for wishing to retain the records, [3] the petitioner's age, criminal record, and employment history, [4] the length of time that has elapsed between the arrest and the petition to expunge, and [5] the specific adverse consequences the petitioner may endure should expunction be denied.
>
> *Wexler, supra* at 879 (citation omitted).
>
> We have emphasized that in applying the balancing test and considering the above factors, the court must analyze the particular, specific facts of the case before it. *Id.* at 880–81. The mere assertion by the Commonwealth of a general interest in maintaining accurate records of those accused of a crime does not

- 6 -

outweigh an individual's specific, substantial interest in clearing his or her record. ***Id.*** at 881–82.

In addition, ***Wexler*** explicitly placed the burden of proof on the Commonwealth. The case against the ***Wexler*** appellants had been *nolle prossed* after the Commonwealth had admitted that it would be unable to sustain its burden of proof at trial. ***Wexler, supra*** at 880. Nonetheless, the trial court denied the appellants' petition to expunge their arrest records, and the Superior Court affirmed. [The Supreme] Court reversed and ordered expungement, concluding that the Commonwealth had not proffered "compelling evidence" to justify the retention of the appellants' arrest records. ***Id.*** at 881. Importantly, in general terms, we held that when the Commonwealth admits that it is unable to bear its burden of proof beyond a reasonable doubt at trial, then "the Commonwealth must bear the burden of justifying why the arrest record should not be expunged." ***Id.*** at 880.

***Id.*** at 993–94.

The defendant's right to seek expungement of records in a *nolle prossed* case does not arise from Pennsylvania's expungement statute, 18 Pa.C.S.A. § 9122. ***Moto***, 23 A.3d at 993-94. Instead, it is a constitutional right based on principles of substantive due process. As ***Wexler*** states,

[t]he serious harm an individual may suffer as a result of the Commonwealth's retention of an arrest record has been set forth in ***Commonwealth v. Malone***, 244 Pa. Super. 62, 68-69, 366 A.2d 584, 587-88 (1976). Because of this potential hardship, the Court in ***Malone*** recognized that in certain circumstances substantive due process guarantees an individual the right to have his or her arrest record expunged.

***Wexler***, 431 A.2d at 879.

The trial court correctly acknowledged that the ***Wexler*** test governed Appellant's motion to expunge the records in his five *nolle prossed* cases. Pa.R.A.P. 1925(a) Opinion, 2/3/23, at 7, 9. The focus of this appeal is to

determine whether the court properly exercised its discretion in applying this test.

Regarding the first **Wexler** factor, the strength of the Commonwealth's case against Appellant, the court asserted that "the Commonwealth's case against expungement was strong after considering the evidence." **Id.** at 10. The court explained:

> Appellant's secured criminal history reflects six criminal matters, all involving identical charges of violating a [PFA] order pertaining to the same complainant (one of the criminal matters Appellant pled *nolo contendere* and received six months of probation). Furthermore, this court considered the PARS Reports of the criminal matters under expungement consideration, which detail Appellant's criminal acts associated with the violations of the protection from abuse order.

**Id.**; **see also id.** at 10 ("the court properly considered the strength of the Commonwealth's case against the Appellant when it denied the petitions") (citations to record omitted). We are constrained to disagree with this assessment.

Appellant was convicted in a separate case in 2007 for violating a PFA order relating to his wife (a third-degree misdemeanor) and harassment (a summary offense). The five *nol prossed* cases arise from accusations by Appellant's former wife in mid-2008. There was no preliminary hearing in any of these cases, so the Commonwealth never formally presented a *prima facie* case against Appellant. Nor was there any trial because the Commonwealth withdrew all charges. Nor did the Commonwealth furnish any testimony relating to these cases during the hearing on Appellant's expungement

petition. Despite this lack of evidence, the court found "strong" evidence against Appellant in the five records based on the PARS reports generated at the time of Appellant's five arrests.

Further, the PARS reports did nothing more than recite allegations against Appellant. They were not sworn statements; they were not subject to cross-examination; and they did not provide a factfinder with an opportunity to assess witness credibility. They were nothing more than hearsay—that is, "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c) (definition of hearsay). Had the 2008 cases proceeded to trial, limited to the evidence in the expungement record, the court would have entered judgments of acquittal at the conclusion of the Commonwealth's case-in-chief, because the PARS records would have been inadmissible as hearsay, and the remaining evidence (the PFA order and Appellant's 2007 conviction for violating this order) would not have established criminal misconduct in 2008. We therefore find the court abused its discretion by determining that the PARS reports provided strong evidence against expungement.[3]

_____

[3] We do not wish to suggest that the insufficiency of the evidence in the record automatically entitles a defendant to expungement when his case is *nolle prossed*. The lack of evidence in the record might be due to other factors that do not support expungement. For example, the record might lack information because the complaining witness is too scared to come to court to testify. For

*(Footnote Continued Next Page)*

Turning to the second **Wexler** factor, the Commonwealth's reason for retaining the records, the court stated:

The Commonwealth's reasons for retaining the criminal history information are due to the repetitiveness and nature of the Appellant's domestic violence course of conduct. The court agreed with the Commonwealth after it considered the Appellant's secured criminal history and PAR[S] Reports.

Opinion at 10-11 (citations to record omitted). The court adopted the position taken by the Commonwealth during the expungement hearing, wherein the prosecutor stated:

[T]he record as presented shows a course of conduct with respect to the same complainant. And the Commonwealth has a strong interest in maintaining information based on that course of conduct. [W]hile the age of the case is … not so recent it does take place in the 2000's. The nature of each transcript is similar showing a disregard for a court order.

N.T., 7/25/22, at 7. We conclude again the trial court abused its discretion in determining that the Commonwealth had a strong interest in maintaining these records. The only evidence suggesting "repetitive" behavior or a "domestic violence course of conduct," to use the trial court's terms, were (1) Appellant's PFA order and 2007 conviction and (2) hearsay allegations in the PARS reports about Appellant's 2008 conduct. As discussed above, this evidence would not have survived a motion for judgment of acquittal in a

---

this reason, we emphasize that even when the Commonwealth's case lacks strength, it still is necessary to evaluate the other **Wexler** factors as well as other factors that the court deems pertinent. **See Moto**, 23 A.3d at 993 (**Wexler's** list of five factors is "non-exhaustive").

- 10 -

criminal trial due to legal insufficiency. Given the weakness or lack of evidence—particularly the unreliability of the hearsay allegations of 2008 misconduct—the court exercised its discretion improperly in determining that the Commonwealth had a strong interest in retaining Appellant's records.

The court failed to evaluate the next two *Wexler* factors: (1) Appellant's age, criminal record, and employment history, and (2) the length of time that has elapsed between his arrests and the petition to expunge. The record shows that at the time of his petition to expunge, Appellant was 65 years old and had remained arrest-free for thirteen years following the charges in 2008. Moreover, over thirteen years elapsed between the withdrawal of charges and Appellant's petition for expungement. The court abused its discretion by failing to take these factors into consideration.

In another case applying *Wexler* to a domestic violence case, we held that a one-year hiatus between dismissal of the charges due to the wife's refusal to testify and the filing of the expungement petition was too short, "when one considers that the statute of limitations for the instant offenses was two years." *Commonwealth v. Drummond*, 694 A.2d 1111, 1114 (Pa. Super. 1997). Here, unlike in *Drummond*, Appellant did not file his expungement petition prematurely. He waited over a decade after expiration

of the statute of limitations on the most serious charge against him[4] before filing his expungement petition.

We turn to the court's analysis of the fifth **Wexler** factor, the adverse consequences the petitioner might endure should expungement be denied. The court properly determined that Appellant failed to present any evidence that retention of the records will cause him economic harm. Nevertheless, the court abused its discretion by concluding that retention of the records presents no danger to Appellant's reputation because the records are sealed and are not available to the public. Opinion at 11-12.

Our Supreme Court rejected a similar argument in **Wexler**, in which one of the petitioners was a child whose arrest record was sealed following completion of her probation. The **Wexler** court rejected the argument that sealing the record adequately protected the child, reasoning that members of the public far too often gain access to sealed police records to which they should not have access. **Wexler**, 431 A.2d at 882. Therefore, the court determined that expungement was necessary even when the record was sealed from public view. The same reasoning applies here: sealing Appellant's records does not completely safeguard them from public access.

---

[4] The most serious charge was Appellant's alleged violation of the PFA order, which was graded as a third-degree misdemeanor and thus had a two-year statute of limitations. **See** 42 Pa.C.S.A. § 5552(a).

The court also asserted that denial of expungement of the 2008 records will not prejudice Appellant because he did not move to expunge his 2007 arrest and *nolo contendere* plea. Opinion at 12. This reasoning might have force when a petitioner has an extensive history of convictions. **See**, **e.g.**, **Commonwealth v. Wallace**, 97 A.3d 310 (Pa. 2014) (affirming denial of expungement where petitioner was incarcerated at time of expungement hearing and had vast array of state and federal convictions). Here, however, the 2007 case is Appellant's only other contact with the criminal justice system. Prospective employers and other members of the public are likely to judge Appellant more harshly if they have access to six arrest records instead of only one. Stated another way, access to six arrest records will harm Appellant's reputation more than access to one record.

Noting that **Wexler's** list of factors is not exhaustive, the trial court added one additional factor for denying expungement—its determination that Appellant's testimony during the expungement hearing was not credible. The court opined:

> Appellant testified "I never bothered [the complainant]," "I never harmed [the complainant]," and "I'll never forgive [the complainant] ..." This court found Appellant's testimony not credible due to the fact on August 10, 2007, Appellant pled *nolo contendere* to identical charges that dealt with the same complainant, in which Appellant received six months of probation.

Opinion at 12-13. The court suggests that it *did not* believe Appellant's testimony, and that it *did* believe Appellant continued to harass his former wife in 2008, simply because Appellant pled guilty to violating the PFA order

- 13 -

in 2007. The court's suspicion that Appellant continued to harass his wife in 2008 lacks an evidentiary foundation. The 2008 records contain nothing more than hearsay, and the Commonwealth presented no evidence during the expungement hearing that Appellant engaged in any misconduct after 2007. Thus, the court improperly concluded that Appellant's testimony warranted denial of expungement.

In short, we conclude that the court's analysis of the *Wexler* factors constituted an abuse of discretion. The allegations in the records post-2007 admitted to argue against expungement are pure hearsay that have never been substantiated; the Commonwealth has not demonstrated a strong or valid interest in retaining these records; over thirteen years passed between withdrawal of the 2008 cases and Appellant's petition to expunge the 2008 records; Appellant is now a senior citizen and has had no other contact with the criminal justice system besides the 2007 PFA order conviction, and the unsubstantiated 2008 cases; and the fact that the 2008 records are sealed does not guarantee that they are inaccessible to the public. With regard to the non-*Wexler* factor raised by the trial court, the fact that the court did not find Appellant's expungement hearing testimony credible does not demonstrate that Appellant engaged in any misconduct after his 2007 conviction.

For these reasons, we conclude that the court abused its discretion by denying Appellant's expungement petition. We reverse and remand with instructions to expunge all records relating to Appellant's 2008 cases.

Order reversed. Case remanded with instructions to expunge all records relating to Appellant's 2008 cases. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/3/2024